# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FAIRPLAY ELECTRIC CARS, LLC,   )
)
)
)
)   C. A. NO. 1:06-cv-00060-JJF
Plaintiff,   )
)
v.   )
)
TEXTRON INNOVATIONS INC., AND   )
TEXTRON, INC. (INCLUDING ITS E-Z-   )
GO DIVISION),   )
)
)
Defendants.   )


## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS, TRANSFER OR STAY SECOND-FILED
## DECLARATORY JUDGMENT ACTION


Edmond D. Johnson (#2257)
Peter B. Ladig (#3513)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

OF COUNSEL:
Scott L. Robertson
Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC 20006
(T) (202) 955-1500
(F) (202) 778-2201

Attorneys for Defendants
Textron Innovations Inc., and
Textron Inc. (including its E-Z-GO Division)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ....................................................................................................... 3

      A.    The Parties, the Patents-in-Suit, and the Ongoing First-Filed Litigation Pending in
            the United States District Court for the Southern District of Georgia ..................... 3

            1.    The Ongoing Litigation Between the Same Parties Regarding the Same
                  Design Patents-in-Suit and Trade Dress .......................................................... 3

            2.    The Defendants (the Plaintiffs in the Georgia Action) .................................. 7

            3.    FairPlay Electric Cars, LLC (the enjoined Defendant in the ongoing
                  Georgia litigation)........................................................................................... 7

            4.    United States Design Patent No. 369,762 ...................................................... 8

III.  ARGUMENT............................................................................................................. 8

      A.    Even If Subject Matter Jursidiction Existed Over This Declaratory Judgment
            Action, The Court Can And Should Exercise Its Discretion To Decline
            Jurisdiction In Light Of The Prior Pending Action Between The Same Parties
            Relating To The Same Patents-in-Suit....................................................................... 8

      B.    This Court Lacks Subject Matter Jurisdiction Over This Declaratory Judgment
            Action Because FairPlay Does Not Have A Reasonable Apprehension Of Being
            Sued With Respect To The 2007 ZX Model Cars. ................................................... 12

      C.    This Is A Second-Filed Action, And The Court Should Therefore Defer To The
            First-Filed Action Because There Are No Compelling Reasons To Facilitate
            FairPlay's Blatant Forum-Shopping. ....................................................................... 15

      D.    Alternatively, The Court Should Transfer Venue Pursuant to 28 U.S.C. § 1404(a)
            Due To The Existence Of The Ongoing Prior Litigation Between The Same
            Parties And The Same Patents. ................................................................................. 17

            1.    The Southern District of Georgia is a more convenient forum for the parties
                  and witnesses. ............................................................................................... 19

            2.    No third party witnesses are located in this forum. ..................................... 20

            3.    The location of records and other documents weighs in favor of transfer...21

            4.    The practical considerations regarding trial overwhelmingly favor transfer
                  of this action.................................................................................................. 21

          5.     Considerations of docket congestion favor transfer......................................21

IV.    CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE**

*A.P.T., Inc. v. Quad Environmental Tech. Corp., Inc.*, 698 F.Supp. 718
    (N.D. Ill. 1988)......................................................................................................18, 20

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227 (1937).............................................12

*BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir.1993) .........................9

*Bergh v. State of Washington*, 535 F.2d 505 (9th Cir. 1976)..............................................11

*Brittingham v. Commissioner of Internal Revenue*, 451 F.2d 315 (4th Cir. 1971).............11

*Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352
    (Fed. Cir. 2004)..........................................................................................8, 9, 13, 15

*Chase Manahattan Bank USA v. Freedom Card, Inc.*, 265 F.Supp.2d 445
    (D. Del. 2003) ....................................................................................................16, 17

*Coffman v. Breeze Com.*, 323 U.S. 316 (1945)..................................................................12

*Corixa Corp. v. IDEC Pharm. Corp.*, 2002 W.L. 265094
    (D. Del. Feb. 25, 2002) ..................................................................................16, 20, 21

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3rd Cir. 1941) ......................................16

*Dippold-Harmon Enterps., Inc. v. Lowe's Cos., Inc.*, 2001 W.L. 1414868
    (D. Del. Nov. 13, 2001) .........................................................................................20, 21

*EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996)................................................9

*Exxon Corp. v. U.S. Department of Energy*, 594 F.Supp. 84
    (D. Del. 1984) ........................................................................................................11, 12

*Fina Research. SA. v. Baroid Ltd.*, 141 F.3d 1479 (Fed. Cir. 1998) .................................13

*Genentech v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993)......................................16, 17

*Hanes Corp. v. Millard*, 531 F.2d 585 (D.C. Cir. 1976)....................................................9

*International Harvester Co. v. Deere & Co.*, 623 F.2d 1207
    (7th Cir. 1980)....................................................................................................8, 9, 10, 14

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3rd Cir. 1995)....................................19

*Makarova v. United States*, 201 F.3d 110 (2nd Cir. 2000) ....................................................12

*Mann Manufacturing Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971) .....................11, 12

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936)................................13

*People with AIDS Health Grp. v. Burroughs Wellcome Co.*, 1992 W.L. 18834
    (D. D.C. Jan 17, 1992) ......................................................................................8, 9, 10

*Serco Serv. Co. v. Kelley Co., Inc.*, 51 F.3d 1037 (Fed. Cir. 1995) ...................................16

*Sierra Applied Sci. v. Advanced Energy Industrial*, 363 F.3d 1361
    (Fed. Cir. 2004)................................................................................................................14

*Sirius Satellite Research Inc. v. Acacia Research Corp.* 2006 W.L. 238999
    (S.D.N.Y. Jan 30, 2006)...........................................................................................13, 14

*Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631 (Fed. Cir. 1991) ...............................12

*Teva Pharms. USA, Inc. v. Abbott Labs.*, 2004 W.L. 2271827
    (N.D. Ill. Oct. 7, 2004)................................................................................................14, 15

*Ultronic Systems Corp. v. Ultronix, Inc.*, 217 F.Supp. 89 (D. Del. 1963).........................17

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ....................................................................18

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ............................................................8, 16

## FEDERAL STATUTES

35 U.S.C. §§ 102, 103, 112..............................................................................................5

28 U.S.C. § 1391.............................................................................................................18

28 U.S.C. § 1404......................................................................................................2, 17, 18

28 U.S.C. § 2201...................................................................................................... *passim*

## I.    INTRODUCTION

The defendants Textron Innovations Inc. and Textron Inc. (including its E-Z-GO Division) (hereinafter "E-Z-GO") respectfully move this Court to dismiss, transfer, or stay plaintiff FairPlay Electric Cars, LLC's ("FairPlay") second-filed action, in which FairPlay requests a declaratory judgment of non-infringement with respect to E-Z-GO's design patents.

One week before FairPlay filed this declaratory judgment action in this Court, another federal district court entered a preliminary injunction against FairPlay in a case involving the same parties and the same design patents of E-Z-GO.  The filing of this case in this Court by plaintiff FairPlay therefore represents the most egregious form of forum-shopping, as there is already another action proceeding in another federal district court pertaining to the same parties and the same patents.[1]  In the Georgia action, a federal district court judge has found in no uncertain terms that golf cars manufactured and sold by FairPlay — specifically, its Fleet and Legacy models — constitute blatant knock-offs of E-Z-GO's commercially successful TXT series of golf cars and an infringement of E-Z-GO's U.S. Patent No. 369,762.[2]  FairPlay now asks this Court to declare that a new model of golf car — its "2007 ZX car" — does not infringe the same design patents involved in the Georgia action.

This Court should dismiss, transfer, or stay this second-filed action.  First, the Court lacks subject matter jurisdiction to hear this declaratory judgment action, and *must* dismiss the case.  As FairPlay conceded to the Georgia Court, FairPlay has kept the appearance and design of its

---

[1] The first-filed case is pending in the United States District Court for the Southern District of Georgia, Augusta Division (hereinafter, "the Georgia Court"), Civil Action No. CV 1:06-009.

[2] Although consumers commonly refer to golf cars as "golf carts," they are most often called the former by manufacturers, distributors, bulk purchasers and lessees.

new 2007 ZX car a secret.  Thus, E-Z-GO has not had any communications with FairPlay about the 2007 ZX car, and has not charged it with infringement.  Indeed, ***nowhere in FairPlay's declaratory judgment complaint does FairPlay contend that E-Z-GO has charged the 2007 ZX car with infringement***.  Accordingly, under settled Federal Circuit law, FairPlay does not have a reasonable apprehension of being sued by E-Z-GO with respect to the 2007 ZX car and there is no subject matter jurisdiction over the action.  Even if subject matter jurisdiction existed, this Court can and should exercise its discretion to decline jurisdiction over the case because of the ongoing first-filed action in Georgia.

Second, to the extent that FairPlay may argue it has a "reasonable apprehension" of suit over the 2007 ZX car by virtue of the parties' litigation over the same patents-in-suit in Georgia, this argument simply emphasizes why this Court should dismiss or transfer the case.  If it is alleged that the Georgia litigation has created a case or controversy with respect to the 2007 ZX car that requires judicial resolution, it is manifest that it is the Georgia Court that should provide that resolution.  This case is simply a second-filed mirror-image action pertaining to the same parties and the same patents-in-suit already at issue in the Georgia court.  Indeed, in the Georgia action FairPlay has already asserted eighteen defenses and four counterclaims, including, *inter alia,* allegations that each of the three design patents-in-suit is invalid on various grounds.

FairPlay, therefore, is engaged in a blatant forum-shopping effort to escape the scrutiny of the Georgia federal district court that has already found FairPlay to be a knock-off artist.  Accordingly, pursuant to either Rule 12(b)(1), the first-filed doctrine or, alternatively, 28 U.S.C. § 1404(a), E-Z-GO respectfully asks this Court to dismiss this action for lack of subject matter jurisdiction, or to transfer or stay this action.

## II.    BACKGROUND

### A.    The Parties, the Patents-in-Suit, and the Ongoing First-Filed Litigation Pending in the United States District Court for the Southern District of Georgia

As will be shown, this declaratory judgment action involves the same parties and the same patents-in-suit as those involved in an ongoing federal court action in the United States District Court for the Southern District of Georgia.  The Court in that case has already conducted a hearing and entered a preliminary injunction order against FairPlay (the plaintiff here), enjoining FairPlay from further sales and marketing of a line of knock-off golf cars that infringe E-Z-GO's design patents and trade dress.  In issuing the injunction order, the Court left no doubt that FairPlay's golf cars were direct infringing copies.  Thus, FairPlay has run to this Court in order to litigate on a parallel front, ostensibly on the ground that it requires judicial resolution of whether a new model of golf car that it intends to introduce will infringe E-Z-GO's design patents.  However, *E-Z-GO has never charged this new model of golf car with infringement.*

### 1.    The Ongoing Litigation Between the Same Parties Regarding the Same Design Patents-in-Suit and Trade Dress

On January 17, 2006, E-Z-GO filed an action in the United States District Court for the Southern District of Georgia, Augusta Division, against FairPlay, alleging design patent infringement, trade dress infringement, as well as state law claims for unfair competition and deceptive trade practices.[3]  *See* Skenes Dec., (Exhibit A attached hereto) ¶ 3 (attaching complaint, hereinafter "Georgia Complaint").  E-Z-GO's design patents are United States Design Patent Nos. 369,762 (the "'762 Patent"), 345,717 (the "'717 Patent"), and 373,099 ("the '099 Patent") (collectively, "the E-Z-GO Patents").  Georgia Complaint, ¶ 2.  E-Z-GO immediately

_____

[3] The plantiffs in the Georgia action are likewise Textron Innovations Inc. and E-Z-GO, a division of Textron Inc.

moved for a preliminary injunction against FairPlay's Legacy and Fleet model golf cars, and the

Georgia Court issued a show cause order, setting the matter for a hearing to be conducted on

January 23, 2006. Skenes Dec., (Exh. A attached hereto)¶¶ 3, 5. On that date, the parties

appeared, and the Court heard oral argument, factual and expert testimony, and actually

inspected both the infringing FairPlay Fleet model car, as well as E-Z-GO's commercial

embodiment of the '762 Patent, the "TXT." *Id.* at ¶ 5 (attaching excerpts from transcript of

January 23 hearing (hereinafter "Transcript")).

　　After hearing the evidence and observing for itself the infringing FairPlay Fleet model,

the Honorable Dudley H. Bowen Jr., United States District Judge, granted the preliminary

injunction. *Id.* at ¶¶ 5-6 (attaching preliminary injunction order, and order continuing

preliminary injunction until further order of the Court). Commenting on the identical appearance

of the infringing FairPlay golf car compared to the '762 Patent and the patented TXT car, the

Court issued the following findings of fact and conclusions of law:

> I find the Fairplay Fleet cart that I observed to be substantially similar to the
> design depicted in 369,762.
>
> At this juncture and at this phase of the case, admittedly early on, there is, in my
> view, a likelihood, a very significant, very substantial likelihood of success on the
> merits. Perhaps beyond the unusual "substantial" likelihood of success on the
> question of infringement of a design patent I see a very substantial probability of
> success on the merits of the claim of design patent infringement.
>
> 　　　　　　　　　　　　　　　****
>
> *I cannot at this juncture imagine how many professional experts it would take*
> *me to conclude that the one golf cart which I saw made by Fairplay is not an*
> *infringement on the design patent 369,762 which is embodied in the cart which*
> *is made and marketed by Textron E-Z-GO.*
>
> The proof of the appearance of the one as an infringement upon the other in my
> view, while pictures are important, is best obtained by a visual comparison of the
> two carts. I have seen what I saw. *I see an infringement, a very clear one. One*
> *which might have some minor difference in the stiffeners of the front cowling,*

*but as I have said that distinction is, in my view, but a less than differential [sic, deferential] nod toward some pretended originality.*

Transcript, at 107, 109-10.[4]

The Court then entered an Order preliminarily enjoining FairPlay from "making, assembling, importing, marketing, selling, or leasing the two seater versions of [Fairplay's] Fleet and Legacy Model Golf Cars, or any equivalent golf car." *See* Skenes Dec., (Exh. A attached hereto) ¶ 5 (attaching preliminary injunction order).

On or about February 8, 2006, FairPlay filed a "responsive pleading and counterclaims" in the Georgia Court. *Id.,* ¶ 15 (attaching FairPlay Responsive Pleading and Counterclaims, hereinafter "Georgia Counterclaims"). In its Georgia Counterclaims, FairPlay asserted eighteen separate defenses and four counterclaims, including, *inter alia,* defenses that each of the three design patents-in-suit are invalid under 35 U.S.C. §§ 102, 103, 112, and/or 171. Georgia Counterclaims, at 1-2. FairPlay also alleged a counterclaim of patent misuse, Georgia Counterclaims at ¶¶ 23-25, and defenses of failure to comply with the patent marking statute, prosecution history estoppel, equitable estoppel, the fair use doctrine, and various defenses against E-Z-GO's trade dress claims. *Id.* at 2-3. FairPlay raised no objection to venue or jurisdiction in the Georgia Court and, moreover, affirmatively asserted that Court's jurisdiction over FairPlay's counterclaims. *Id.* at 11.

One week after the Georgia Court entered the preliminary injunction order, and without any charge of infringement ever having been made with respect to FairPlay's 2007 ZX cars,

---

[4] The evidence before the Georgia Court showed that Fairplay's copy is so complete and shameless that parts from the Fairplay golf car are interchangeable with those on the TXT golf car. *Id.* at 27, 33, 34. Fairplay's intentional and willful copy not only replicates the ornamental design of the TXT, *it also replicates the exact placement of the rivet holes*. *Id.* at 26, 30, 31, 33, 59.

FairPlay filed this declaratory judgment action in this Court. FairPlay's complaint in this Court does not allege that E-Z-GO has charged the 2007 ZX cars with infringement. *See generally* FairPlay Complaint, ¶¶ 9-19. And, in fact, neither Textron Innovations Inc. nor E-Z-GO has charged the 2007 ZX cars with infringement. *See* Runstadler Dec., (Exhibit B attached hereto)¶¶ 5-9 (TII has not charged 2007 ZX cars with infringement); Skenes Dec., (Exh. A attached hereto)¶¶ 7-15 (E-Z-GO has not charged 2007 ZX cars with infringement).

Indeed, at the hearing before the Georgia Court, FairPlay's counsel made clear that FairPlay has kept the appearance and design of its 2007 ZX cars secret, Transcript at 16-17, and it declined to produce any product literature that would allow the Georgia Court or E-Z-GO to scrutinize it in connection with the hearing. Although the Court invited FairPlay to produce product literature to show the appearance of the 2007 ZX cars, FairPlay claimed it was unable to produce this literature because the product was being unveiled at trade shows that would take place a few days later. Thus, the following colloquy ensued between the Georgia Court and FairPlay's counsel:

> THE COURT: Mr. Stebbins, I wonder if you brought with you, by any chance, any promotional materials on the new and more distinct golf cart?
>
> COUNSEL FOR FAIRPLAY: It is not a secret that we will be unveiling this thing, ***but it is a secret as to what it looks like. So we haven't got any material on it today.***

Transcript at 16 (emphasis added).

Mr. Stebbins, counsel for FairPlay, then deferred to his co-counsel as to his knowledge of the appearance of the 2007 ZX car. However, FairPlay's co-counsel was equally unwilling to let the Court or E-Z-GO have a look at the 2007 ZX.

> CO-COUNSEL FOR FAIRPLAY [MR. STERNSTEIN]: As far as the new unit the new car that is coming out as Mr. Stebbins said we don't have any promotional literature because that is being unveiled at the show.

*Id.* at 16-17.

Accordingly, no charge of infringement has been made with respect to the 2007 ZX, the sole basis for FairPlay's claim here that it requires a declaratory judgment.

### 2.    The Defendants (the Plaintiffs in the Georgia Action)

E-Z-GO is a division of Textron Inc., and is based in Augusta, Georgia, where the related action is pending.  Skenes Dec., (Exh. A attached hereto)¶ 2.  E-Z-GO maintains its primary business operations at 1451 Marvin Griffin Road, Augusta, Georgia, 30906.  *Id.*

Textron Inc. is incorporated in Delaware, and has its primary operations in Providence, Rhode Island.  *Id.*  Textron Innovations Inc. is the assignee of the patents-in-suit; it is incorporated in Delaware, with its headquarters in Providence, Rhode Island.  Rundtadler Dec., (Exh. B attached hereto)¶¶ 2-4.

### 3.    FairPlay Electric Cars, LLC (the enjoined Defendant in the ongoing Georgia litigation)

Upon information and belief, FairPlay Electric Cars, LLC, was apparently established on or around October 12, 2004, as "Player Electric Car," or "Player Golf Car, LLC" ("Player").  It appears, however, that on April 27, 2005, Player — for reasons presently unknown — suddenly changed its name to FairPlay Electric Cars, LLC (hereinafter collectively "FairPlay").[5]  FairPlay alleges that its principal place of business is 743 Horizon Ct., Suite 333, Grand Junction, Colorado.  Complaint, ¶ 5.  FairPlay's complaint alleges that it is incorporated in Colorado as well.  *Id.*

---

[5] On information and belief, E-Z-GO understands that complaints of trademark infringement of the "Player" name may have prompted the change.

4.    **United States Design Patent No. 369,762**

As noted above, E-Z-GO's Georgia complaint, and FairPlay's declaratory judgment

complaint in this Court, each involve the same three patents-in-suit.  The application maturing

into E-Z-GO's '762 design patent was filed on October 18, 1994.  The '762 patent was granted

on May 14, 1996.  By assignment, Textron Innovations Inc. is the owner of all right, title and

interest in the three patents-in-suit.  Runstadler Dec., (Exh. B attached hereto)¶ 4.

**III.    ARGUMENT**

    **A.    Even If Subject Matter Jursidiction Existed Over This Declaratory
        Judgment Action, The Court Can And Should Exercise Its Discretion To
        Decline Jurisdiction In Light Of The Prior Pending Action Between The
        Same Parties Relating To The Same Patents-in-Suit.**

In order for this Court to entertain this declaratory judgment action, it must have subject

matter jurisdiction to hear the action.  For the reasons stated *infra,* it does not.  But moreover, the

case law is clear that even if a justiciable controversy exists, federal courts have "unique and

substantial" discretion to decline to exercise their jurisdiction.  *Wilton v. Seven Falls Co.,* 515

U.S. 277, 286 (1995); *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1217 (7th Cir.

1980).

The Declaratory Judgment Act provides that a court "may" declare the rights of an

interested party.  *See* 28 U.S.C. § 2201.  Therefore, prior to applying the two-part test for

subject matter jurisdiction, the Court must determine whether to exercise its discretionary

jurisdiction in rendering a declaratory judgment.  *People with AIDS Health Grp. v. Burroughs*

*Wellcome Co.,* 1992 W.L. 18834, at *1 (D. D.C. Jan. 17, 1992).

The Court is to exercise this discretion "in accordance with the purposes of the

Declaratory Judgment Act and the principles of sound judicial administration." *Capo, Inc. v. Dioptics Med. Prods., Inc.,* 387 F.3d 1352, 1355 (Fed. Cir. 2004) (citing *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 813-14 (Fed. Cir. 1996)). The Court must determine whether hearing the case would "serve the objectives for which the Declaratory Judgment Act was created." *EMC,* 89 F.3d at 814. In addition, in exercising its discretion, a federal court must consider the public interest ***and the plaintiff's need for the requested relief.*** *International Harvester,* 623 F.2d at 1218.

Federal courts have described the public policies underlying the Declaratory Judgment Act as follows:

> The purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute ***without having to await the commencement of legal action by the other side. It accommodates the practical situation wherein the interests of one side to the dispute may be served by delay in taking legal action.*** However, the controversy must be actual, not hypothetical or of uncertain prospective occurrence. The requirement of actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory judicial rulings-all raised in this case.

*BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977 (Fed. Cir. 1993) (emphasis added).

Thus, "[o]rdinarily one of the most common and indisputably appropriate uses of the declaratory judgment procedure is to enable one who has been charged with patent infringement to secure a binding determination of whether proposed conduct will infringe a patent in question ***without waiting until he becomes the defendant in an actual infringement suit.***" *People with AIDS,* 1992 W.L. 18834, at *2 (emphasis added) (citing *Hanes Corp. v. Millard,* 531 F.2d 585, 592 (D.C. Cir. 1976)); *accord Capo,* 387 F.3d at 1357 (patentee's threats of suit constituted the type of "extrajudicial patent enforcement" that justified declaratory judgment jurisdiction). Further, "[t]he propriety of declaratory relief must be

judged with reference to whether the issue is more properly resolved in another forum."
*People with AIDS,* 1992 W.L. 18834, at \*2 (citing *Hanes,* 531 F.2d at 596). The existence of a
more appropriate forum is an appropriate basis for the court to decline to exercise its
discretionary jurisdiction. *See Int'l Harvester,* 623 F.2d at 1218 ("A declaratory judgment
should issue only when it will serve a useful purpose . . . . the pending suit may make
resolution of the issues presented by this declaratory judgment suit unnecessary.").

In light of the above-stated policies, it is readily evident that there is absolutely no
reason why this Court should exercise its discretion to adjudicate this case. In this case, all
considerations weigh ***against*** the Court exercising its discretion to entertain this action. First,
and most fundamentally, the parties are already litigating in Georgia over the same design
patents. FairPlay has already filed four counterclaims and eighteen defenses in the Georgia
Court that, *inter alia,* attack the validity of E-Z-GO's design patents and trade dress. *See*
Georgia Counterclaims at 1-4, 11-13. And that Court has already heard factual and expert
testimony and entered a preliminary injunction order against other models of FairPlay's golf
cars.

Thus, FairPlay filed this suit, not because it had no other means of adjudicating the
dispute, but rather in order to establish a competing parallel litigation front for its own
perceived tactical advantage. The traditional concern addressed by the declaratory judgment
statute — which arises when a patentee accuses a party of infringement but then refuses to file
suit — is not implicated here in the slightest. And if FairPlay genuinely believed it was
threatened with suit with respect to its 2007 ZX cars, it could have sought resolution of that
dispute within the context of the Georgia Action, where the parties are already litigating over
these same patents. Of course, it did not even attempt to do so.

Second, and likewise, it is readily evident that another forum is available for FairPlay to adjudicate its claims, and that alternative forum is far more appropriate given that it is already presiding over the same parties with respect to the same patents-in-suit, and has already entered a preliminary injunction order in the case. Indeed, FairPlay can offer no viable reason why the Georgia Court cannot and should not adjudicate any dispute — if any exists — as to FairPlay's new model of golf cars, where FairPlay has asked that same Court to take jurisdiction over its counterclaims.

Third, the doctrine of comity dictates that this Court should decline jurisdiction where another federal district court has already entered an injunction order. A court that has issued an injunction has continuing power to supervise and modify its injunctions in accordance with changed conditions. *Exxon Corp. v. U.S. Dep't of Energy,* 594 F. Supp. 84, 89 (D. Del. 1984). Therefore, the Georgia Court should be the sole court to address the scope of its own injunction and any defenses or requests to modify that injunction.

"When a court is confronted with an action that would involve it in a serious interference with or usurpation of this continuing power, considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction … and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there." *Mann Mfg. Inc. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir. 1971) (citation and footnote omitted); *accord Bergh v. State of Washington,* 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases"); *Brittingham v. Commissioner of Internal Revenue,* 451 F.2d 315, 318 (4th Cir. 1971) ("comity dictates that courts of coordinate

-11-

jurisdiction not review, enjoin or otherwise interfere with one another's jurisdiction"). This is true even where a district court believes it could exercise subject matter jurisdiction over a case. *Exxon,* 594 F. Supp. at 91.

For these reasons, this Court has therefore declined to exercise jurisdiction over a case that would require "[t]wo different courts [to judge] separate parts of the whole interrelated dispute." *Id.* at 92. And likewise, the *Mann* decision, which was a patent case, is particularly instructive. In that case the appellate court held that "[i]n the absence of compelling circumstances the court initially seized of a controversy should be the one to decide whether it will try the case." *Mann Mfg.,* 439 F.2d at 407. Thus, where a first court had taken jurisdiction and entered an injunction order, it was improper for a second federal district court to enter its own injunction order pertaining to overlapping matters. *Id.* at 408.

**B.    This Court Lacks Subject Matter Jurisdiction Over This Declaratory Judgment Action Because FairPlay Does Not Have A Reasonable Apprehension Of Being Sued With Respect To The 2007 ZX Model Cars.**

Even if this Court were inclined to exercise its discretion to hear the case, it is clear that it may not do so because subject matter jurisdiction is absent. A district court ***must*** dismiss a case pursuant to Fed. R. Civ. P. 12(b)(1) when it lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States,* 201 F.3d 110, 113 (2nd Cir. 2000).

The Declaratory Judgment Act limits issuance of a declaratory judgment to cases of "actual controversy." 28 U.S.C. § 2201(a). If no actual controversy exists between the parties regarding the subject on which declaratory judgment is sought, the court lacks subject matter jurisdiction. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-40 (1937); *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 634 (Fed. Cir. 1991). A declaratory judgment "may not be a medium for securing an advisory opinion in a controversy which has not arisen." *Coffman v. Breeze Com.,* 323 U.S. 316, 324 (1945).

-12-

Under well-established Federal Circuit law, a declaratory judgment plaintiff must have a "reasonable apprehension" of suit with respect to the product that is the subject of the action; this "reasonable apprehension" is generally shown by virtue of an actual charge of infringement by the patentee with respect to that product. "More is needed than knowledge of or notice of an adversely held patent." *Capo,* 387 F.3d at 1355. Thus, in declaratory judgment actions involving allegations of patent noninfringement, invalidity, or unenforceability, an "actual controversy" exists where there is ***both***: (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit,[6] and (2) present activity by the declaratory plaintiff which could constitute infringement or concrete steps taken with the intent to conduct such activity. *Fina Research. SA. v. Baroid Ltd.,* 141 F.3d 1479, 1481 (Fed. Cir. 1998); *accord, Capo,* 387 F.3d at 1356. The declaratory plaintiff bears the burden to establish, by a preponderance of the evidence, that the two-part test for an actual controversy has been met.[7] *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936) ("[T]he court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.").

As FairPlay's complaint tacitly acknowledges, E-Z-GO has made no such charge of infringement, and no other circumstances exist to establish subject matter jurisdiction or create a "reasonable apprehension" of suit.

It is insufficient for the purpose of subject matter jurisdiction that a dispute between the

---

[6] "'Reasonableness' is judged by an objective standard, based on the conduct of the patent holder, not the subjective feeling of the potential infringer." *Sirius Satellite Research Inc. v. Acacia Research Corp.,* 2006 W.L. 238999, at * 3 (S.D.N.Y. Jan. 30, 2006).

[7] Thus, the Court must refrain from drawing from the pleadings inferences favorable to the party asserting jurisdiction, and it may refer to evidence outside the pleadings. *Sirius Satellite Research,* 2006 W.L. 238999, at * 2.

parties exists in Georgia with respect to FairPlay's older models of golf cars. "The Federal

Circuit has made it clear that a declaratory relief plaintiff must establish a reasonable

apprehension of suit with respect to *each* product in suit." *Teva Pharms. USA, Inc. v. Abbott

Labs.,* 2004 W.L. 2271827, **4-5 (N.D. Ill. Oct. 7, 2004) (emphasis in original). And in order to

create a reasonable apprehension of suit with respect to a specific product, "the patentee 'must

signal an intention to file suit claiming infringement.'" *Sirius Satellite,* 2006 W.L. 238999 at * 4

(citing *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1326 (Fed. Cir. 1998)).

Accordingly:

> Where, as here, a declaratory-judgment plaintiff attempts to ground jurisdiction
> on activities involving distinct, technologically different products, *the court must
> carefully calibrate its analysis to each of the products.* To do otherwise would
> risk issuing an advisory opinion on one product -- or on a method of using that
> product -- based on an actual controversy involving another product.

*Sierra Applied Sci. v. Advanced Energy Indus.,* 363 F.3d 1361, 1374 (Fed.Cir. 2004); *see also*

*Int'l Harvester Co.,* 623 F.2d at 1212 (The specific product at issue "was in no way involved in

the prior suit and thus that suit cannot be viewed as anything more than a general indication that

Deere considers litigation a viable alternative once it has determined that a competitor is

producing a product which infringes the patent at issue here."). In the *Sierra Applied Sciences*

case, the Federal Circuit made clear that "jurisdiction must be separately considered as to each"

of the products of the declaratory judgment plaintiff. *Sierra Applied Sciences,* 363 F.3d at 1373-

74.

As a result, where as here "the only objective facts supporting [the declaratory judgment

plaintiff's] apprehension of a patent infringement suit involving its [product] are *prior legal*

*proceedings,* in the United States and Canada, *involving different products* from the one at issue

in this action," the *Teva* Court held this was "*insufficient to make Teva's apprehension of suit*

-14-

'*reasonable*.'" *Teva Pharms.*, 2004 W.L. 2271827, at *5 (emphasis added).[8]

Applying this law to the facts of this case, the ongoing Georgia Court action cannot create a "reasonable apprehension" with respect to the 2007 ZX Model cars. The Georgia Court did not hear evidence as to the design and appearance of the 2007 ZX Model cars; indeed, FairPlay made certain that it heard no such evidence, contending that no product literature was available even though a trade show at which the cars would be disclosed to the public was only days away. And E-Z-GO did not ask that the Georgia Court enjoin the 2007 ZX cars. Likewise, E-Z-GO has made no charge of infringement with respect to the 2007 ZX Model cars. *See* Runstadler Dec., (Exh. B attached hereto)¶¶ 5-9; Skenes Dec., (Exh. A attached hereto)¶¶ 7-15. Nor does FairPlay's complaint in this Court allege any such charge of infringement.[9]

Accordingly, for the above-stated reasons, the E-Z-GO defendants respectfully request that the Court dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

**C.      This Is A Second-Filed Action, And The Court Should Therefore Defer To The First-Filed Action Because There Are No Compelling Reasons To Facilitate FairPlay's Blatant Forum-Shopping.**

Likewise, settled law dictates that this Court should dismiss, transfer, or stay this action pursuant to the first-filed doctrine. Where two patent lawsuits involving the same claims are

---

[8] And likewise, the Court held in the alternative that it would decline to exercise its discretionary jurisdiction. *Id.* The Court noted that if the patents were ultimately found invalid in the other litigation, the declaratory judgment case would become unnecessary. Thus, "in view of the issues pending in [the other litigation], [the declaratory judgment plaintiff's] need for declaratory relief in this case does not outweigh the interest in judicial expediency and in avoiding unnecessary court decisions." *Id.*

[9] This case is therefore readily distinguishable from the result in *Capo,* in which the patentee made several explicit threats, such as that the accused infringer was "racing toward infringement," "charging down a path . . . [that would] end up in a multi-million dollar lawsuit," and that the patentee "would have no choice but to defend its patents against infringement." *Capo,* 387 F.3d at 1353-54, 1356.

-15-

filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given

preference absent special circumstances. *Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.

Cir. 1993), *abrogated on other grounds, Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995).[10]

"***There must ... be sound reason that would make it unjust or inefficient to continue the first-***

***filed action***" in order to give deference to the second-filed action. *Genentech,* 998 F.2d at 938

(emphasis added).[11]  "The party who first brings a controversy into a court of competent

jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation

of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.,* 122

F.2d 925, 930 (3rd Cir. 1941).

This Court has consistently honored the *Genentech* rule. *See, e.g., Chase Manahattan*

*Bank USA v. Freedom Card, Inc.,* 265 F. Supp.2d 445, 448-50 (D. Del. 2003); *Corixa Corp. v.*

*IDEC Pharm. Corp.,* 2002 W.L. 265094, *2 (D. Del. Feb. 25, 2002).

No such special circumstances exist that merit departure from the first-filed rule in this

case.  There are no "considerations of judicial and litigant economy" that would merit deference

to this second-filed action, nor are there any issues with respect to the availability of witnesses,

an absence of jurisdiction over necessary parties, or the like, with respect to the Georgia action.

---

[10] Because the first-filed rule is one that affects "national uniformity in patent practice," Federal Circuit law governs its application. *Serco Serv. Co. v. Kelley Co., Inc.,* 51 F.3d 1037, 1038 (Fed. Cir. 1995).

[11] E-Z-GO does not, by requesting transfer in the alternative, concede that ***any*** court, at this time, has subject matter jurisdiction to hear Fairplay's claims with respect to the 2007 ZX cars.  The fact remains that no charge of infringement has been made with respect to those cars. However, to the extent that this Court may believe that a "reasonable apprehension" has arisen as a result of the Georgia litigation, it should be the Georgia Court that adjudicates any further issues.

*Genentech,* 998 F.2d at 937-38.  The only circumstance present is FairPlay's desire to shop forums.

And certainly, there is no sound reason that would make it unjust or inefficient to continue the first-filed action in Georgia in order to give deference to FairPlay's second-filed action.  To the contrary, the sole basis for FairPlay's "second-filing" in this Court is pure forum shopping, in order that FairPlay may escape from the scrutiny of another federal court that has already found that FairPlay is engaged in illegal copying and infringement.

The first-filed rule provides the Court with the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court.  *Chase Manhattan Bank,* 265 F. Supp.2d at 448 (citing *EEOC v. Univ. of Pennsylvania,* 850 F.2d 969, 971-72 (3d Cir. 1988)).  Alternatively, the first-filed rule also permits a stay of this action in favor of the first-filed action.  *See Ultronic Systems Corp. v. Ultronix, Inc.,* 217 F. Supp. 89 (D. Del. 1963).

There being no reason to depart from the first-filed doctrine, E-Z-GO respectfully requests that this Court dismiss or stay this action in favor of the first-filed action in Georgia.

**D.     Alternatively, The Court Should Transfer Venue Pursuant to 28 U.S.C. § 1404(a) Due To The Existence Of The Ongoing Prior Litigation Between The Same Parties And The Same Patents.**

Although the Court needs no additional reason to dismiss or transfer this action, alternatively, the Court should transfer the action pursuant to 28 U.S.C. § 1404(a).[12]  Under the federal venue statute, the Court may transfer venue of an action to any other district where it might have been brought, "[f]or the convenience of the parties and witnesses, [and] in the

---

[12] If Fairplay believed that venue is more convenient in this Court, it should have moved the Georgia Court to transfer venue, and allowed that Court to decide the issue.  Fairplay did not do so.

interest of justice." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent 'waste

of time, energy, and money' and 'to protect litigants, witnesses and the public against

unnecessary inconvenience and expense.'" *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). E-

Z-GO acknowledges that under a Section 1404(a) analysis it bears the burden to demonstrate that

the balance of convenience weighs in favor of transfer to the Georgia Court. But it is readily

evident that is the case here.

First, the Georgia Court is a district where this action might have been brought. 28

U.S.C. § 1404(a). A suit seeking declaration of non-infringement and/or patent invalidity is

subject to the general venue statute. *A.P.T., Inc. v. Quad Envtl. Tech. Corp., Inc.,* 698 F. Supp.

718, 723 (N.D. Ill. 1988). The general venue statute permits suit in a judicial district (1) "where

any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred … or (3) a judicial

district in which any defendant may be found, if there is no district in which the action may

otherwise be brought." 28 U.S.C. § 1391(b). A corporation is deemed to "reside" in any judicial

district in which it is subject to personal jurisdiction at the time the action is commenced. 28

U.S.C. § 1391(c).

Both of the E-Z-GO defendants here "reside" in the Georgia forum within the meaning of

the venue statute as applied to corporate entities, because they are both subject to personal

jurisdiction in that forum. Indeed, both defendants have, of course, brought suit against FairPlay

in the Georgia Court on the same patents, thereby subjecting themselves to the personal

jurisdiction of that Court. Additionally, E-Z-GO maintains its primary golf car operations in

Augusta, Georgia. Skenes Dec., (Exh. A attached hereto)¶ 2. Finally, FairPlay itself has filed

counterclaims in the Georgia Court and asked that Court to accept jurisdiction and venue over

-18-

those claims. Thus, there can be no genuine dispute that FairPlay's declaratory judgment action might have been brought in the Georgia Court.

To determine whether to transfer, courts examine "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3rd Cir. 1995). The *Jumara* decision identifies relevant factors guiding the transfer analysis, which fall into two categories: (1) those relating to the private convenience of the litigants and witnesses, and (2) those affecting the public interest in the fair and efficient administration of justice. *Id.* at 879-80.

As this Court has found in other "second-filed" cases, discussed *infra,* the existence of a previously-filed and related action pending in Georgia weighs heavily in favor of transfer on convenience grounds.

### 1.    The Southern District of Georgia is a more convenient forum for the parties and witnesses.

There is no particular geographic convenience to this forum, and, indeed, there is little connection with this forum and the action. FairPlay is a Colorado corporation with its headquarters in Colorado. E-Z-GO is a division of Textron Inc., and is located in Augusta, Georgia, the transferee forum.[13] Skenes Dec., (Exh. A attached hereto) ¶ 2. While Textron Inc. is incorporated in this forum, its primary operations are located in Providence, Rhode Island. *Id.* As a Delaware corporation, Textron understands that it may be required on occasion to litigate

---

[13] At its Augusta, Georgia facility, E-Z-GO employs approximately 750 people, of which at least eighty percent are dedicated to the production, marketing and sales of its patented TXT golf car. Transcript at 77.

here, and, in fact, Textron Innovations Inc. is currently a plaintiff in another litigation in this forum.

However, where, as here, litigating in this Court would require E-Z-GO to litigate against the same party in two courts regarding the same patents, a serious inconvenience is imposed. "As a general proposition, cases should be transferred to the district where related actions are pending." *A.P.T.,* 698 F. Supp. at 723 (citation omitted). "Such a transfer will conserve judicial resources and provide for the efficient adjudication of complex litigation due to the possibility of consolidating both discovery and trial." *Id.* at 723-24. "***Transfer is even more appropriate where the suit in the other district was the first one filed."*** *Id.* at 724 (emphasis added). Transfer is therefore warranted for the convenience of the parties and the witnesses. *Corixa,* 2002 W.L. 265094 at *3 (granting transfer of second-filed action and stating "bringing witnesses and relevant documents to only one location minimizes the disruption caused to all parties"); *accord Dippold-Harmon Enterps., Inc. v. Lowe's Cos., Inc.,* 2001 W.L. 1414868, **6-7 (D. Del. Nov. 13, 2001).

All of the parties and their witnesses will be best served (FairPlay's tactical interests aside) by litigating this action in the Georgia transferee forum, where the parties are already litigating the same patents-in-suit.

### 2.    No third party witnesses are located in this forum.

E-Z-GO is not aware of ***any*** third-party witnesses likely to be located in this forum, nor is it aware of any other third-party witnesses for whom this forum would be more convenient. Accordingly, the interest of third party convenience is served by transfer to Georgia, since the same witnesses are likely to be involved in the pending Georgia action. *Corixa,* 2002 W.L. 265094, at * 4 ("[r]equiring that third-party witnesses come to [the second-filed forum] to litigate

this action separately cannot be considered convenient and in the interest of justice"); *Dippold-Harmon,* 2001 W.L. 1414868, at *6.

### 3. The location of records and other documents weighs in favor of transfer.

Because E-Z-GO's golf car facility is located in Augusta, Georgia, that Court is likely to be a more convenient forum for this litigation insofar as the availability of relevant documents is concerned. Again, FairPlay is located in Colorado, and E-Z-GO is not aware of any documents necessary for this case that are likely to be located in this forum. Moreover, again, because there is an ongoing first-filed action in the Georgia Court, there is "no need to require that the parties move the same documents across the country," and "it would be much more efficient to litigate these related actions in one location." *Corixa,* 2002 W.L. 265094, at *4; *Dippold-Harmon,* 2001 W.L. 1414868, at *7.

### 4. The practical considerations regarding trial overwhelmingly favor transfer of this action.

Because the Georgia Court is already presiding over the same parties with respect to the same patents-in-suit, it is readily evident that practical considerations and judicial expediency favor transfer. The same parties, the same patents, and, in all likelihood, the same witnesses, are likely to be involved in both cases. FairPlay has attacked the validity of E-Z-GO's patents and trade dress in Georgia, and the resolution of these issues in that forum could impact heavily upon any issues with respect to FairPlay's new 2007 ZX cars. There is simply no reason why the parties should adjudicate most of their claims in Georgia, but litigate some overlapping issues pertaining to one model of FairPlay's products in this Court.

### 5. Considerations of docket congestion favor transfer.

Likewise, considerations of docket congestion favor transfer. There is no reason why the resources of two different federal courts should be occupied with this dispute. And the Georgia

Court has already conducted a hearing, heard factual and expert testimony, inspected one of FairPlay's infringing golf cars, and entered a preliminary injunction order. Once again, FairPlay's interest in forum-shopping cannot overcome the manifest logic of having all issues resolved by the Georgia Court. Other public policy considerations overwhelmingly favor transfer because the District of Georgia has an interest in the outcome of this case and public policy discourages FairPlay's forum shopping.

The only apparent connection this Court has with this dispute is that the declaratory judgment defendants are incorporated in Delaware. By contrast, the E-Z-GO division of Textron, including hundreds of employees involved with the manufacture and sale of golf cars, are located in Augusta, Georgia, where the Georgia Court is located. This dispute is therefore a local controversy for the Georgia Court to resolve.

Moreover, public policy militates against allowing this action to remain before this Court, because the sole basis for having the case here is FairPlay's tactical interest in forum-shopping. Indeed, FairPlay is a Colorado company with no apparent connection to this forum. FairPlay simply desires to escape from Georgia, and so they have brought suit in Delaware hoping that they can persuade the Court to keep the case based on this being Textron's state of incorporation. The Court should not facilitate such egregious forum-shopping.

## IV.    CONCLUSION

For the reasons stated herein, E-Z-GO respectfully requests that this Court dismiss this action for lack of subject matter jurisdiction or, in the alternative, transfer or stay this second-filed action in favor of the ongoing federal district court action in Georgia regarding the same parties and the same design patents-in-suit.

Dated:  February 21, 2006

THE BAYARD FIRM

Edmond D. Johnson (#2257)
Peter B. Ladig (#3513)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19801
(302) 655-5000

Attorneys for Defendants
Textron Innovations Inc., and
Textron Inc. (including its E-Z-GO Division)

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500

Attorneys for Defendants
Textron Innovations Inc., and
Textron Inc. (including its E-Z-GO Division)

### CERTIFICATE OF SERVICE

I, Edmond D. Johnson, hereby certify that on February 21, 2006, I electronically

filed the foregoing *Memorandum of Law in Support of Motion To Dismiss, Transfer or*

*Stay Second-Filed Declaratory Judgment Action* with the Clerk of the Court using

CM/ECF, which will send automatic notification of the filing to the following:


Richard L. Horwitz, Esquire
David E. Moore, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899-0951


Edmond D. Johnson (#2257)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAIRPLAY ELECTRIC CARS, LLC, | ) |
| | ) |
| | ) |
| | )   C. A. NO. 1:06-cv-00060-JJF |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TEXTRON INNOVATIONS INC., AND | ) |
| | ) |
| TEXTRON INC., (INCLUDING E-Z-GO | ) |
| A DIVISION OF TEXTRON INC.), | ) |
| | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF RONALD P. SKENES JR.

I, Ronald P. Skenes Jr., declare, depose and state the following:


1.    My name is Ronald P. Skenes Jr. I am over eighteen years old, and the
facts stated herein are based on my own personal knowledge, and if called at trial,
deposition or hearing, I could and would testify competently as to those facts.

2.    I am Manager, Marketing & Communications for E-Z-GO (A Division of
Textron Inc.) ("E-Z-GO"), of 1451 Marvin Griffin Road, Augusta, GA 30906  This
Augusta address is the main office for E-Z-GO.  Textron Inc. is a Delaware Corporation
with its main office located at 40 Westminster Street, Providence, Rhode Island, 02903

3.    On January 17, 2006, E-Z-GO, along with Textron Innovations Inc, filed a Complaint and a Motion for Preliminary Injunction in The United States District Court for the Southern District of Georgia against Fairplay Electric Cars, LLC ("Fairplay") Attached as Exhibit 1 is a true and accurate copy of the complaint (without exhibits) filed in the Georgia action against Fairplay

4.    The Georgia action was given docket number 1:06-cv-00060-JJF and assigned to The Honorable United States District Judge Dudley H. Bowen, Jr

5.    A Show Cause Hearing was set for January 23, 2006 at 1 P M in Augusta, Georgia During the hearing, Judge Bowen heard arguments from both parties and heard factual and expert testimony I was present at the Show Cause Hearing and testified as a witness. Attached as Exhibit 2 is a true and accurate copy of relevant excerpts from the transcript of the Show Cause Hearing. On January 24, 2006, Judge Bowen issued an Order granting E-Z-GO's Motion for Preliminary Injunction. Attached as Exhibit 3 is a true and accurate copy of Judge Bowen's Order

6.    On February 6, 2006, Judge Bowen issued a second Order stating that the preliminary injunction entered on January 24, 2006, shall be and remain in effect until further Order of the Court The February 6, 2006 Order also set another hearing for February 22, 2006, in Augusta, Georgia Attached as Exhibit 4 is a true and accurate copy of Judge Bowen's Order

7.    It is my understanding and belief that this declaratory judgment action brought by Fairplay in the United States District Court for the District of Delaware pertains to a new model of golf car that Fairplay refers to as the "2007 ZX" model.

8.      To the best of my knowledge, prior to January 25, 2006, E-Z-GO had not seen the "2007 ZX" golf car, nor had E-Z-GO seen any advertisements or other literature describing or showing the appearance of the "2007 ZX" golf car

9.      From January 26 - 29, 2006, the PGA Merchandise Show and Convention was held in Orlando, Florida. This Show is one of the most important industry trade shows of the year. It is a premier event to showcase new product lines and merchandise. As the Manager for Marketing & Communications for E-Z-GO I am in charge of overall marketing activities. I was present at the PGA Show from January 25-29, 2006.

10.     Fairplay displayed its "2007 ZX" model vehicles at the Orlando trade show The Fairplay booth and display were located about three booths over from the E-Z-GO display.

11.     At the outset of the 2006 PGA Golf Show I was aware of Judge Bowen's January 24, 2006 Order. I was only one of a select few people at E-Z-GO that was aware of the Georgia action against Fairplay and I was responsible for overall marketing activities for E-Z-GO at the PGA Show. At the PGA Show all E-Z-GO employees or sales representatives in attendance were briefed and instructed to not make any contact with Fairplay personnel. Further, all E-Z-GO personnel were instructed to direct any inquiries about the pending Georgia action to either myself, or to Kathleen C. Searle (Vice President - Communications, of E-Z-GO). Together, we instructed all E-Z-GO personnel present at the Show to avoid discussing any aspect of the case with any Fairplay representative, or any other third party.

12.     During the 2006 PGA Golf Show, to the best of my knowledge E-Z-GO personnel did not make any comments to Fairplay concerning its "2007 ZX" model golf

car line. To the best of my knowledge, no communications at all occurred between any authorized E-Z-GO representative and any Fairplay representative. The PGA Golf show ended on January 29, 2006.

      13.    It is my understanding that Fairplay filed the pending Delaware action on January 30, 2006, concerning its "2007 ZX" line of golf cars.

      14.    To the best of my knowledge, E-Z-GO has not made any allegations of patent infringement to Fairplay regarding Fairplay's new "2007 ZX" model of golf car. Further, to the best of my knowledge, E-Z-GO has not communicated at all with Fairplay, except through its authorized counsel in the Georgia lawsuit.

      15.    On February 8, 2006, Fairplay filed its Answer and Counterclaims in the pending Georgia action. Attached as Exhibit 5 is a true and accurate copy of Fairplay's Answer and Counterclaims.

Signed under the pains and penalties of perjury, this 17th day of February, 2006

_Ronald P Skenes, Jr_

Ronald P  Skenes Jr

# EXHIBIT 1

# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

2006 JAN 17  AM 11: 04

CLERK C Reynolds
SO. DIST. OF GA.

| | |
|---|---|
| TEXTRON INNOVATIONS INC., AND ) | |
| ) | |
| E-Z-GO ) | |
| (A DIVISION OF TEXTRON INC.), ) | |
| ) | CIVIL ACTION NO. **CV106-009** |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| FAIRPLAY ELECTRIC CARS, LLC, ) | JURY TRIAL DEMANDED |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND JURY DEMAND

1.    TEXTRON INNOVATIONS INC. and TEXTRON INC. (and more specifically, the E-Z-GO division of Textron Inc.) (collectively "E-Z-GO") by and through its attorneys, hereby demands a jury trial and complains of Defendant FAIRPLAY ELECTRIC CARS, LLC ("Fairplay" or "Defendant") as follows:

## NATURE OF THE ACTION

2.    This is an action for, *inter alia*, patent infringement, trade dress infringement, unfair competition, and deceptive trade practices. E-Z-GO's claims of patent infringement arise under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.* E-Z-GO seeks to enjoin and obtain damages resulting from Defendant's unauthorized manufacture, use, sale, offer to sell and/or importation into the United States for subsequent use or sale of products that infringe the claim of United States Design Patent Nos. 369,762 (the "'762 Patent"), 345,717 (the "'717 Patent"), and 373,099 (the "'099 Patent"), all entitled "Golf Car" (collectively, the "E-Z-GO

Patents")  A copy of the '762, '717 and '099 Patents are attached as Exhibits A-C, respectively.

E-Z-GO seeks preliminary injunctive relief to prevent Defendant from continuing to infringe the

'762 Patent and permanent injunctive relief to prevent Defendant from continuing to infringe the

E-Z-GO Patents.  In addition, E-Z-GO seeks a recovery of monetary damages resulting from

Defendant's past infringement of the E-Z-GO Patents.  Textron Innovations Inc. is the lawful

assignee of all right, title and interest in and to the E-Z-GO Patents  The '762 Patent was

lawfully issued on May 14, 1996 in the name of William R. Molzon and James M. Criscuolo.

The '717 Patent was lawfully issued on April 5, 1994, and the '099 Patent was lawfully issued on

August 27, 1996, both with the same named inventors as the '762 Patent.

3       This action for patent infringement involves Defendant's manufacture, use, sale, offer for

sale, and/or importation into the United States of infringing golf cars, golf carts, or low speed

electric vehicles.

4       E-Z-GO has been irreparably harmed by Defendant's infringement of its patent rights.

Moreover, Defendant's unauthorized, infringing use of E-Z-GO's patented designs has

threatened the value of this intellectual property because Defendant's conduct results in E-Z-

GO's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell

and/or importing the patented invention.

5.      Defendant's disregard for E-Z-GO's property rights has resulted in lost sales

Accordingly, unless and until Defendant's continued acts of infringement are enjoined, E-Z-GO

will suffer further irreparable harm for which there is no adequate remedy at law.

6.      Furthermore, Defendant has committed and is committing acts of trade dress

infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  E-Z-GO's golf cars

have a distinctive trade dress which has acquired secondary meaning.  E-Z-GO's golf car designs

are unique, ornamental and the purchasing public identifies the product design with E-Z-GO.

Defendant's unauthorized manufacture, use, sale, offer to sell and/or importation into the United

States for subsequent use or sale of the protected golf car trade dress infringes upon the rights

and good will established and maintained by E-Z-GO.

7.    Furthermore, Defendant has engaged in unfair competition practices in further violation

of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

8.    Furthermore, Defendant is also in violation of the Georgia laws of unfair competition,

O.C.G.A. § 23-2-55.

9.    Furthermore, Defendant's conduct is also in violation of the Georgia Deceptive Trade

Practices Act, O.C.G.A. §§ 10-1-370, *et seq.*

10.    Finally, Defendant's practices of unfair competition and deceptive trade practices are also

in violation of the common law.

### THE PARTIES

11.    Textron Innovations Inc. is a Delaware corporation organized and existing under the laws

of Delaware and having its principal place of business at 40 Westminster Street, Providence,

Rhode Island, 02903.

12.    Textron Inc. is a Delaware corporation organized and existing under the laws of Delaware

and having its principal place of business at 40 Westminster Street, Providence, Rhode Island,

02903.

13.    E-Z-GO is a Division of Textron Inc. with its principal place of business at 1451 Marvin

Griffin Road, Augusta, Georgia 30906, and is a manufacturer of golf car products.

14    On information and belief, Fairplay is a limited liability corporation organized and existing under the laws of Colorado. Fairplay represents that it has a place of business at 743 Horizon Ct., Suite 333, Grand Junction, Colorado, 81506.

15.    Fairplay advertises golf cars for sale nationally, and has established a network of regional distributorships throughout the United States to advertise, market and sell golf cars infringing E-Z-GO's intellectual property rights, including within the State of Georgia.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over the subject matter of this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction over the subject matter of the federal trade dress and unfair competition actions pursuant to 28 U.S.C. §§ 1331 and 1338(a)-(b), as well as 15 U.S.C. § 1121.

17.    The Court has supplemental jurisdiction over the state and common law causes of action pursuant to 28 U.S.C. § 1367.

18.    The Court has personal jurisdiction over Fairplay because it has committed acts of patent and trade dress infringement and has engaged in unfair competition and deceptive trade practices within the State of Georgia giving rise to this action and Fairplay has established minimum contacts with the forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

19.    E-Z-GO maintains its principal place of business at 1451 Marvin Griffin Road, Augusta, Georgia 30906. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) for at least the reasons that the Defendant has committed acts within this judicial district giving rise to this action and does business in this district, including sales, offers for sale, and providing service and/or support to their respective customers in this district.

## COUNT I

### (Patent Infringement of United States Design Patent No. 369,762)

20. Paragraphs 1 through 19 are incorporated by reference as if fully restated herein.

21. Defendant makes, uses, sells, offers to sell and/or imports into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental design claimed in the '762 Patent.

22. Defendant infringes the claim of the '762 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused E-Z-GO to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions. E-Z-GO is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

23. E-Z-GO is entitled to recover damages adequate to compensate for the infringement, including Defendant's profits pursuant to 35 U.S.C. § 289. E-Z-GO is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

## COUNT II

### (Willful Patent Infringement of United States Design Patent No. 369,762)

24. Paragraphs 1 through 23 are incorporated by reference as if fully restated herein.

25. Defendant's infringement has been willful, deliberate and with knowledge of E-Z-GO's rights under the '762 Patent, and unless the Defendant is enjoined by this Court, such acts of willful infringement by the Defendant will continue. E-Z-GO is without adequate remedy at law. E-Z-GO is entitled to recover damages adequate to compensate for the infringement of the '762 Patent, as well as additional damages for willful infringement including increased damages under

35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III

### (Patent Infringement of United States Design Patent No. 345,717)

26.    Paragraphs 1 through 25 are incorporated by reference as if fully restated herein.

27.    Defendant makes, uses, sells, offers to sell and/or imports into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental design claimed in the '717 Patent.

28.    Defendant infringes the claim of the '717 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused E-Z-GO to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions. E-Z-GO is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

29.    E-Z-GO is entitled to recover damages adequate to compensate for the infringement, including Defendant's profits pursuant to 35 U.S.C. § 289. E-Z-GO is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

## COUNT IV

### (Willful Patent Infringement of United States Design Patent No. 345,717)

30.    Paragraphs 1 through 29 are incorporated by reference as if fully restated herein. Defendant's infringement has been willful, deliberate and with knowledge of E-Z-GO's rights under the '717 Patent, and unless the Defendant is enjoined by this Court, such acts of willful infringement by the Defendant will continue. E-Z-GO is without adequate remedy at law. E-Z-

GO is entitled to recover damages adequate to compensate for the infringement of the '717

Patent, as well as additional damages for willful infringement including increased damages under

35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35

U.S.C. § 285.

## COUNT V

### (Patent Infringement of United States Design Patent No. 373,099)

31.    Paragraphs 1 through 30 are incorporated by reference as if fully restated herein.

32.    Defendant makes, uses, sells, offers to sell and/or imports into the United States for

subsequent sale or use products that infringe directly and/or indirectly the ornamental design

claimed in the '099 Patent.

33.    Defendant infringes the claim of the '099 Patent through the aforesaid acts, and will

continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused E-Z-

GO to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others

from making, using, selling, offering to sell and importing the patented inventions. E-Z-GO is

entitled to injunctive relief pursuant to 35 U.S.C. § 283.

34.    E-Z-GO is entitled to recover damages adequate to compensate for the infringement,

including Defendant's profits pursuant to 35 U.S.C. § 289. E-Z-GO is entitled to recover any

other damages as appropriate pursuant to 35 U.S.C. § 284.

## COUNT VI

### (Willful Patent Infringement of United States Design Patent No. 373,099)

35.    Paragraphs 1 through 34 are incorporated by reference as if fully restated herein.

36.    Defendant's infringement has been willful, deliberate and with knowledge of E-Z-GO's rights under the '099 Patent, and unless the Defendant is enjoined by this Court, such acts of willful infringement by the Defendant will continue. E-Z-GO is without adequate remedy at law. E-Z-GO is entitled to recover damages adequate to compensate for the infringement of the '099 Patent, as well as additional damages for willful infringement including increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VII

### (Trade Dress Infringement)

37.    Paragraphs 1 through 36 are incorporated by reference as if fully restated herein.

38.    Defendant makes, uses, sells, offers to sell and/or imports into the United States for subsequent sale or use products that directly infringe E-Z-GO's trade dress in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). E-Z-GO's trade dress in its ornamental golf car design has been exhaustively marketed, promoted and sold continuously for at least ten years such that it has acquired secondary meaning within the relevant market. Defendant has used E-Z-GO's trade dress without the authorization of E-Z-GO and continues to trade off the good will created and maintained by E-Z-GO in its trade dress. Defendant's activities cause confusion, mistake, or deception as to the source of E-Z-GO's products and Defendant's association with E-Z-GO. Accordingly, E-Z-GO is entitled to injunctive relief pursuant to 15 U.S.C. § 1116

39.    Defendant's use of E-Z-GO's trade dress has been willful and, as such, E-Z-GO is entitled to damages pursuant to 15 U.S.C. § 1117(a), including E-Z-GO's profits, and/or E-Z-

GO's actual damages and/or the costs of this action  E-Z-GO is further entitled to attorneys' fees and costs because of Defendant's conduct.

## COUNT VIII

### (Unfair Competition)

40.    Paragraphs 1 through 39 are incorporated by reference as if fully restated herein.

41.    Defendant is a direct competitor of E-Z-GO in the golf car market.  Defendant has copied E-Z-GO's product design such that Defendant's conduct falsely suggests association or affiliation with, or authorization or approval from E-Z-GO, that misleads, confuses, or deceives, and is likely to cause confusion, deception and/or mistake as to the association or affiliation of Defendant and E-Z-GO.

42.    Defendant has used E-Z-GO's distinctive and widely recognized trade dress without the authorization of E-Z-GO and, as such, the Defendant's conduct is actionable pursuant to 15 U.S.C. § 1125(a).  Accordingly, E-Z-GO is entitled to injunctive relief pursuant to 15 U.S.C. § 1116

43.    Defendant's deceptive trade practices have been willful and, as such, E-Z-GO is entitled to damages pursuant to 15 U.S.C. § 1117(a), including Defendant's profits, and/or E-Z-GO's actual damages and/or the costs of this action.  E-Z-GO is further entitled to attorneys' fees and costs.

## COUNT IX

### (Georgia Unfair Competition)

44.    Paragraphs 1 through 43 are incorporated by reference as if fully restated herein.

45.    Defendant is a direct competitor of E-Z-GO in the golf car market.  Defendant has copied E-Z-GO's product design such that Defendant's conduct falsely suggests association or affiliation

with, or authorization or approval from E-Z-GO, that misleads, confuses, or deceives, and is likely to cause confusion, deception and/or mistake as to the association or affiliation of Defendant and E-Z-GO. Accordingly, Defendant is in violation of the Georgia laws of unfair competition, O.C.G.A. § 23-2-55, for engaging in unfair competition practices. Defendant's conduct of unfair competition is also contrary to the common law of Georgia.

46.    As a direct and proximate result of Defendant's unfair competition, E-Z-GO has sustained losses and hereby asserts claims for injunctive and monetary relief, including actual damages, Defendant's profits, costs and attorneys' fees.

47.    Defendant's direct copying of E-Z-GO's golf car design shows willful misconduct, malice, wantonness, oppression or that entire want of care that would raise the presumption of conscious indifferences to consequences. Accordingly E-Z-GO seeks an award of punitive damages against Fairplay

## COUNT X

### (Georgia Deceptive Trade Practices)

48.    Paragraphs 1 through 47 are incorporated by reference as if fully restated herein.

49.    Defendant has copied E-Z-GO's product design such that Defendant's conduct falsely suggests association or affiliation with, or authorization or approval from E-Z-GO, that misleads, confuses, or deceives, and is likely to cause confusion, deception and/or mistake as to the association or affiliation of Defendant and E-Z-GO.

50.    Defendant's conduct as described constitutes deceptive trade practices in violation of O.C.G.A. § 10-1-372 and the common law.

51.    As a direct and proximate result of Defendant's deceptive trade practices, E-Z-GO has sustained losses and hereby asserts claims for injunctive and monetary relief, including actual damages, Defendant's profits, costs and attorneys' fees, and any other damages as appropriate pursuant to O.C.G.A. § 10-1-373.

52.    Defendant's direct copying of E-Z-GO's golf car design shows willful misconduct, malice, wantonness, oppression or that entire want of care that would raise the presumption of conscious indifferences to consequences. Accordingly, E-Z-GO seeks an award of punitive damages against Fairplay.

## PRAYER FOR RELIEF

WHEREFORE, E-Z-GO prays for judgment against Defendant, granting E-Z-GO the following relief:

A.    That this Court adjudge and decree that the '762 Patent is valid and enforceable against Defendant.

B.    That this Court adjudge and decree that Defendant has infringed and continues to infringe the '762 Patent.

C.    That this Court adjudge and decree that the '099 Patent is valid and enforceable against Defendant.

D.    That this Court adjudge and decree that Defendant has infringed and continues to infringe the '099 Patent.

E.    That this Court adjudge and decree that the '717 Patent is valid and enforceable against Defendant.

F.    That this Court adjudge and decree that Defendant has infringed and continues to infringe the '717 Patent.

G      That this Court adjudge and decree that E-Z-GO has a protectable trade dress in its ornamental golf car design that has acquired secondary meaning and distinctiveness.

H.      That this Court adjudge and decree that Defendant has infringed and continues to infringe E-Z-GO's trade dress.

I.      That this Court adjudge and decree that Defendant has engaged in unfair competition in violation of federal, state and common law.

J.      That this Court adjudge and decree that Defendant has engaged in deceptive trade practices in violation of federal, state and common law.

K.      That this Court order an accounting of all damages sustained by E-Z-GO as the result of the acts of infringement by the Defendant;

L.      That this Court grant injunctions enjoining the aforesaid acts of infringement by the Defendant, its officers, agents, servants, employees, subsidiaries and attorneys, and those acting in concert with it, including related individuals and entities, customers, representatives, OEMS, dealers, and distributors;

M      That this Court enter an award to E-Z-GO of such damages as it shall prove at trial against Defendant that are adequate to compensate E-Z-GO for said infringements, Defendant's conduct of unfair competition and deceptive trade practices;

N      That this Court order an award to E-Z-GO of up to three times the amount of compensatory damages because of Defendant's willful infringement, and any enhanced damages provided by 35 U.S.C. § 284;

O      That this Court render a finding that this case is "exceptional" and award to E-Z-GO their costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

P    That this Court render a finding that the Defendant's conduct warrants an award of punitive damages against Defendant pursuant to the laws of Georgia or common law; and,

Q.    Grant to E-Z-GO such other, further, and different relief as may be just and proper

## JURY DEMAND

E-Z-GO demands a trial by jury of all matters to which it is entitled to trial by jury pursuant to FED. R. CIV. P. 38.

This _17_ day of _January_____, 2006.

_[signature]_

James B. Ellington
Georgia Bar No. 243858
HULL, TOWILL, NORMAN, BARRETT, & SALLEY
Post Office Box 1564
Augusta, GA 30903-1564
Telephone (706) 722-4481
Fax (706) 722-9779

Attorneys for Plaintiffs:
    Textron Innovations Inc., and
    E-Z-GO (A Division of Textron Inc.)


OF COUNSEL:

Scott Robertson
Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.; Suite 1200
Washington, DC 20006
(T) (202) 955-1500
(F) (202) 778-2201

# EXHIBIT 2

1

1       IN THE UNITED STATES DISTRICT COURT

2         FOR THE SOUTHERN DISTRICT OF GEORGIA

3                 AUGUSTA DIVISION

4   TEXTRON INNOVATIONS, ET AL., )

5             Plaintiffs,        )

6       vs.                      )   FILE NO. CV106-009

7                                )

8   FAIRPLAY ELECTRIC CARS LLC., )

9             Defendant.         )

10

11              (Show Cause Hearing)

12

13  Before:

14           Honorable DUDLEY H. BOWEN, JR.,

15                          District Court Judge

16          at The Federal Courthouse Building,

17  Augusta, Georgia, on the 23rd day of January 2006,

18  commencing at the hour of 1:30 p.m.

19

20

21              RICHARD A. DUERINGER,

22           CERTIFIED COURT REPORTER

23                 P. O. BOX 2106

24           AUGUSTA, GEORGIA   30903

25                (706) 790-6212

2

1
2
3                    INDEX TO EXAMINATIONS
4
5                 WITNESS FOR THE PLAINTIFF
6
7             DIRECT CROSS REDIRECT RECROSS
8    K. BRUNTZ          22       38      46        48
9    J. ANDERS          50       71      74
10   R. SKENES          76
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

3

1   APPEARANCES OF COUNSEL:

2   On behalf of the

3   Plaintiff:      JAMES B. ELLINGTON, Esq.

4                   SCOTT ROBERTSON, Esq.

5                   CHRISTOPHER CAMPBELL, Esq.

6

7   On behalf of the

8   Defendant:      CHARLES C. STEBBINS, III., Esq.

9                   ALLAN STERNSTEIN, Esq.

10

11                       - - -

12          THE COURT:  Mr. Ellington, who should I

13   address as lead counsel?

14          MR. ELLINGTON:  Mr. Robertson will be

15   handling the lead argument.

16          THE COURT:  Mr. Robertson, the defendant

17   Fairplay has told me by way of motion since they

18   don't intend to have this alleged infringing gulf

19   cart at the Florida trade show there is no need to

20   have the hearing today.  What are your comments on

21   that.

22          MR. ROBERTSON: Yes, sir I see the

23   representation and I think that's fairly interesting

24   and I take counsel at their word in and I respect

25   their good faith in that regard. However, I would

6

1   model in question at the trade show nor do we plan

2   to be offering it and we have no brochures for the

3   model. We don't plan to be offering the model for

4   sale. It is in our catalog, but the company is not

5   planning to do anything that would be unique to the

6   trade show. We feel, that being the case, that

7   there is no reason for injunction to be issued

8   simply because of the existence of the trade show.

9           THE COURT: I will tell you what's let's

10  do. We'll forget about the trade show for a

11  moment. When I reviewed these documents it occurred

12  to me that somehow E-Z-Go must have gotten a hold of

13  one of these carts somehow because they were able to

14  dissect it, photograph it and put parts together and

15  they have a fairly impressive display of what fits

16  with this, that and other as far as being

17  interchangeable.

18          So, I am curious as to how they got one

19  if it is not being marketed or sold.

20          MR. STEBBINS: I didn't mean to say that,

21  Your Honor. We have been selling this model for some

22  time. Part of our argument is that this action

23  could have been brought up much earlier than just

24  before the trade show. What's going to happen at

25  the trade show is a different model is going to be

7

1   unveiled and shown. Of course, we contend the

2   present model is materially different from the

3   E-Z-GO product they say we are infringing.

4        I note, Your Honor, although we have not

5   yet had the opportunity to engage an expert we are

6   talking here about a design patent which is

7   different from an engineering patent. I am told that

8   the relatively small differences in the structure

9   and appearance are sufficient to make a separate

10  product that is not infringing on the patent. Of

11  course, the nature of the golf cart is that they are

12  all going to look alike. But we are planing to

13  introduce a new model which is even more different

14  than the one they are complaining about here at the

15  trade show. No one has seen that new model yet, but

16  it is no secret and many people are aware that the

17  new model is going to be brought out at the trade

18  show.

19        So, there will be no promotion of the

20  existing model at trade show. So, in our view this

21  action could have been brought sooner. There is no

22  secret about the model they got anybody can buy one

23  and a good many have been sold.

24        THE COURT: Mr. Stebbins, you and I share

25  a significant level of ignorance about patents. I

9

1    hearing about it and see if there is at least a

2    preliminary phase of an infringement.

3            MR. STEBBINS: Your Honor, we have never

4    seen the proposed order that the Court is being ask

5    to enter. We don't know how broad that order might

6    be. We have an inventory of the existing product

7    and we don't feel it is proper for us to be enjoined

8    from selling that existing product.

9            Frankly, we would not object to an

10   injunction that we won't promote the existing

11   product they say is infringing at the trade show

12   because we won't be doing that any way. I'm having

13   trouble and my client is having trouble

14   understanding how much relief is desired here. We

15   don't think it would be right to plead that the

16   trade show presents an emergency and that be

17   enjoined from selling this product.

18           We certainly don't have a problem with a

19   narrowly tailored injunction that we don't intend to

20   promote this product at the trade show which we are

21   attending strictly for the purpose of unveiling our

22   new model. One which we contend is even a more

23   different model.

24           THE COURT: All right. Mr. Robertson, I

25   would like to hear from you all. I'm going to keep

16

1   me.

2          Mr. Stebbins, I wonder if you brought

3   with you, by any chance, any promotional materials

4   on the new and more distinct golf cart?

5          MR. STEBBINS: It is not a secret that we

6   will be unveiling this thing, but it is a secret as

7   to what it looks like. So, we haven't got any

8   material on it here today. My co-counsel might be

9   able to described it because I believe he has

10  handled all of the patent applications for this

11  predecessor to the Legacy which is an earlier

12  vehicle than the Fleet and it has been out longer.

13  Let me ask him to address the Court if I may.

14          THE COURT: Mr. Sternstein.

15          MR. STERNSTEIN: First of all the Legacy,

16  although counsel indicated they first received

17  material on it Thursday. Actually the Legacy they

18  have known about that for some time as well because

19  there is even an advertisement in their motion

20  papers on the Legacy. So, in their motion papers

21  they point out both yet argue on the Fleet only.

22  That's why in our response we addressed only the

23  Fleet because that is what they addressed.

24          As far as the new unit the new car that

25  is coming out as Mr. Stebbins said we don't have any

17

1  promotional literature because that is being
2  unveiled at the show. It does have a more unique
3  hood ornamentation and disclosure in appearance than
4  the other one that would be visible up in front.
5        As indicated we have been marketing the
6  Fleet car for the some time now. As counsel has
7  indicated they have had one since October. So, it
8  is not something that is that urgent with regard to
9  days.
10       MR. STEBBINS: I don't want to double
11 team, but I would like to comment on the proposed
12 order Mr. Ellington just gave me.
13       THE COURT: Sure.
14       MR. STEBBINS: I don't think the purpose
15 of this hearing should be to obtain an advantage
16 that I perceive the plaintiffs would obtain under
17 this proposed order.
18       Secondly, the thing that I find I
19 difficult to accept is where it says my client will
20 not offer to sell or market its existing cars. We
21 won't do it at the trade show and it is not in our
22 interest to do it at the trade show because they are
23 trying to promote this new one.
24       But look at the situation E-Z-Go and
25 these two other companies have over ninety percent

26

1       A.    It illustrates the back seat assemblies

2   that would have come off the E-Z-Go and Fairplay

3   model.

4       Q.    What is the black piece?

5       A.    It is a portion of the seat back assembly

6   that covers the seat back itself to give it a little

7   bit of an ornamental appearance or a cosmetic

8   appearance.

9       Q.    There appear to be holes in the black

10  plastic piece.  What are the holes for?

11      A.    There are holes on the outside of plastic

12  covers that allow you to attach it to the seat back

13  and there are holes in the rectangular molded

14  section for mounting to the gulf car.

15      Q.    Do the holes in the Fairplay assembly

16  align with the holes in the E-Z-Go model?

17      A.    Yes.

18      Q.    Is the alignment precise?

19      A.    Yes, it is.

20      Q.    How precise is it?

21      A.    It is so precise you can attach it either

22  way.  The E-Z-Go to the Fairplay and vice versa.

23      Q.    Are the outer form of the seat backs

24  identical?

25      A.    Yes.

27

1       Q.    Turning to exhibit 14.  Are these

2  photographs taken during the inspection of the

3  Fairplay golf cart?

4       A.    Yes.

5       Q.    What does exhibit 14 show?

6       A.    It shows the seat bottom assembly from

7  the E-Z-Go car and the seat bottom assembly from the

8  Fairplay car.

9       Q.    Were the seat bottoms of the same size

10  and shape?

11       A.    Yes.

12       Q.    Did they have hinges?

13       A.    They had the same hinges that you can

14  see.

15       Q.    Were the hinges in the same location?

16       A.    Yes.

17       Q.    What is the purpose of the hinges?

18       A.    To allow access to the under side of the

19  car to expose the batteries or the power train.

20  They are designed to let you raise the seat forward

21  and lift it off if necessary.

22       Q.    Were the seat bottoms and side handles on

23  the Fairplay and E-Z-Go cars interchangeable?

24       A.    Yes.

25       Q.    Are the outer forms of the seat bottom

30

1   type of rivets through mounting holes.

2       Q.    And does the dashboard mount to the frame

3   of the golf car?

4       A.    Yes, the lower part of the dashboard has

5   holes that meet with holes in the floorboard and

6   frame of the vehicle.

7       Q.    Do the rivet holes on the Fairplay

8   dashboard align with the E-Z-Go dashboard?

9       A.    Yes.

10      Q.    Does the cowl on the E-Z-Go dashboard fit

11  on to the Fairplay dashboard?

12      A.    Yes, it does.

13      Q.    Are the outer forms and shapes of the

14  dashboards exactly the same between the two carts?

15      A.    Yes.

16      Q.    Turn to exhibit 16.   Were these

17  photographs taken during your inspection of the

18  Fairplay gulf cart?

19      A.    Yes.

20      Q.    What does exhibit 16 show?

21      A.    It is showing the front cowl on each of

22  the vehicles that we had disassembled and laid side

23  by side.

24      Q.    Are there mounting holes on the side of

25  cowl of the E-Z-Go car?

31

1        A.    Yes, you can see the holes in the white

2    easier than you can in the green, but nevertheless

3    they are there.

4        Q.    What are the those mounting holes?

5        A.    They are for mounting the front strut

6    which holds the top canopy or roof of the gulf cart.

7        Q.    Are there corresponding mounting holes on

8    the side of the cowl on the Fairplay car?

9        A.    Yes.

10        Q.    Are the mounting holes in the same

11    location?

12        A.    They were.  The nuts that hold the top

13    canopy is a weld on the frame and when I aligned the

14    cowl with the dash holes the holes on the frame that

15    hold the top came through the body of the front cowl

16    as they would on the E-Z-Go car.

17        Q.    Let me go to exhibit 19.  Are these

18    photographs taken during inspection of the Fairplay

19    golf cart?

20        A.    Yes, the top picture is a picture of the

21    Fairplay when we were disassembling it with the

22    E-Z-Go cowl attached to the Fairplay.  It is showing

23    those holes for the top were lining up and the

24    bottom rivet holes on the frame were lined up on the

25    cowl as well.

33

1       Q.   Does the Fairplay fender have a rivet

2  hole in the identical location as the E-Z-Go rear

3  fender?

4       A.   Yes.

5       Q.   Are the two interchangeable?

6       A.   Yes.

7       Q.   Is the outer shape of the rear fender on

8  the two cars identical?

9       A.   Yes.

10      Q.   Go to exhibit 18.  Were these photographs

11  taken during your inspection of the Fairplay car?

12      A.   Yes.

13      Q.   What does exhibit 18 show?

14      A.   Exhibit 18 shows our front shield or

15  brush guard that sits up underneath the front cowl

16  to cover the shocks and the front suspension

17  component.

18      Q.   What is the purpose of the brush guard?

19      A.   To protect the from end a little bit from

20  brush that would interfere with the shocks or

21  suspension and also to hide the appearance of the

22  mechanical component.

23      Q.   How is the E-Z-Go brush guard attached to

24  the car?

25      A.   There are four holes in the E-Z-Go brush

34

1  guard two of them mount on the top part of the frame

2  and the other two mount to a bracket that hangs down

3  off the frame.

4      Q.   Are there corresponding holes on the

5  Fairplay brush guard?

6      A.   Yes.

7      Q.   Are the brush guards interchangeable?

8      A.   Yes.

9      Q.   Are the frames identical between the two?

10     A.   Yes.

11     Q.   Did you discern any difference in quality

12  between the Fairplay and the E-Z-Go car during your

13  inspection?

14     A.   We found that a shock was loose.  The

15  shocks nuts were loose and they were identified with

16  a piece mark that in the industry is known as a

17  quality check that it has been torqued to the right

18  torque setting.  One of the shock mounts was just

19  finger tight even though they were marked they came

20  loose.

21          We noticed when you look at the rear body

22  we pride ourselves on an automotive class finish and

23  make sure it has the proper gloss similar to an

24  automobile.  The rear body on Fairplay had jagged

25  cut lines.  It is not a smooth cut so it shows

59

1   functional elements of the accused product are

2   infringed by our design patent. I'm only asserting

3   four ornamental elements.

4       Q.   You mentioned the four cups holders.

5   Aren't the cup holders functional?

6       A.   Yes, their function is to holds cups and

7   each individual one has the function to hold a cup,

8   but the ornamental part of it is the arrangement

9   having four in a row together. That's ornamental.

10      Q.   Could the cups be arranged differently?

11      A.   Yes. From looking at some of the prior

12  art they are grouped in two on either side. There

13  are other ways of doing it. In my declaration I

14  included some close up photographs. I looked at the

15  foot pedals. The foot pedals are functional and we

16  are not claiming that they are ornamental. However,

17  I did feel obliged to alert the court to the fact

18  that there was such slavish copying. That even the

19  arrangement of the rivets on the accused product are

20  virtually identical to the rivets on the foot pedals

21  that are found not in the design patent, but on the

22  E-Z-Go car itself.

23      Q.   Look at exhibit 21, specifically at page

24  17, that is your declaration. Can you identify on

25  that page what you are referencing with respect to

77

1        Q.    During that entire time was it resident

2   in Augusta, Georgia?

3        A.    That's correct.

4        Q.    How many people are presently employed at

5   the Augusta facility?

6        A.    Approximately 750.

7             MR. STERNSTEIN: Your Honor, I object to

8   this line of testimony as being irrelevant.

9             THE COURT:  What does this have to do

10  with patent?

11            MR. ROBERTSON: It goes to the irreparable

12  harm.  That is one of the things I have to

13  demonstrate at a preliminary injunction hearing.  I

14  want to illustrate how the potential loss of sales

15  of the car will effect are market share.

16            THE COURT:  Go ahead.

17       Q.    How many of the 750 employees are

18  dedicated to the production, marketing and sales of

19  the TXT car?

20       A.    Eighty to eighty-five percent.

21       Q.    How long have you have you been employed

22  there?

23       A.    Since September of 1986.

24       Q.    How long has the TXT car been on the

25  market?

1    substantially altering the appearance of either golf
2    cart.

3              I have no difficulty in applying the
4    standards of substantial similarity as opposed to
5    something that is identical. That is a
6    conversational phrase and a legal phrase and is one
7    that appears not only in this area of the law, but
8    in others. I find the design of the Textron golf
9    cart to be not only in conformity with, but the
10   embodiment of the design patent number 369,762 and I
11   find the Fairplay Fleet cart that I observed to be
12   substantially similar to the design depicted in
13   369,762.

14             At this juncture and at this phase of the
15   case, admittedly early on, there is, in my view, a
16   likelihood, a very significant, very substantial
17   likelihood, of success on the merits. Perhaps
18   beyond the unusual "substantial" likelihood of
19   success on the question of infringement of a design
20   patent I see a very substantial probability of
21   success on the merits of the claim of design patent
22   infringement.

23             The balancing of the harm is an easier
24   question. Obviously, with the type of market that
25   both of these purveyors of golf carts seek to serve,

109

So, if the patent 369,762 is to receive any construction that affords any protection then the public interest is served by the granting of such an injunction.

I must always observe, especially when faced with the appearance of attorneys like Mr. Sterntein and Mr. Stebbins who do put such an appealing presentation before the Court in such a polished way and who contend that given time they could undoubtedly inundate the court with evidence which would compel me to conclude in a contrary direction, that nothing is impossible and everything is possible. And I certainly want to hear and see a more detailed and a more informative presentation whenever that can be assembled and I look forward to it, but I cannot at this juncture imagine how many professional experts it would take me to conclude that the one golf cart which I saw made by Fairplay is not an infringement on the design patent 369,762 which is embodied in the cart which is made and marketed by Textron E-Z-Go.

The proof of the appearance of the one as an infringement upon the other in my view, while pictures are important, is best obtained by a visual comparison of the two carts. I have seen what I

110

saw.  I see an infringement, a very clear one.  One
which might have some minor difference in the
stiffeners of the front cowling, but as I have said
that distinction is, in my view, but a less than
differential nod toward some pretended originality.

I have spoken for about twenty-five
minutes enumerating into the record of this case my
findings of facts and to a degree my conclusions of
law.  Those have been in narrative form and because
of the press of time they will remain so.  I am not
going to try to embellish them.  It is probable that
given some time in which to draft and redraft them I
could express myself in a more artful form, but we
are not seeking an artful expression only an
expression of the reason or basis for the entry of
this Court's injunction.  While this statement of my
findings and conclusion at this early juncture in
this case may be less than artfully stated it is
incorporated in the record by this reference and
will be referred to in the order that I intend to
enter tomorrow morning.

Now, I will tell you and you may want to
communicate to your client, Mr. Stebbins, that over
your objection I will restrain, for the pendency of
this restraining order which will bear a date and

1  which will extend for ten days thereafter or longer,
2  any sale, marketing or importation of the Legacy or
3  Fleet line of golf carts.  If you find that some are
4  already in transit awaiting whatever casual sales
5  might be in the offing, knowing that they are not
6  going to be featured at the trade shows, we'll deal
7  with that.  They could be placed in some holding
8  area.  I am not suggesting they have to be dumped
9  off the side of a ship somewhere, but they can be
10 put in some sort of customs holding area or
11 something like that.  I will go ahead and enter the
12 order.  I will probably rewrite it and it may be
13 before noon tomorrow.  Any questions, counsel?
14          MR. ROBERTSON: No, Your Honor.
15          MR. STEBBINS: No questions about the
16 order that the court is going to enter, Your Honor.
17 I am informed in these cases as we proceed that it
18 is not unusual for the Court to enter an order for
19 expedited discovery so we can get to a final
20 judgment.  Would it be appropriate to ask about that
21 at this time?
22          THE COURT:  Are either one of you asking
23 for a jury trial?
24          MR. ROBERTSON: I would have to the confer
25 with my client, but I would recommend that we waive

112

1    that.

2              THE COURT:  Of course, that won't

3    expedite anything.  Are you from Chicago, Mr.

4    Sternstein?

5              MR. STERNSTEIN:  Yes, Your Honor.

6              THE COURT:  Do you remember Judge

7    Campbell out there?

8              MR. STERNSTEIN:  No, Your Honor.

9              THE COURT:  Well, that may be a little

10   before your time and we'll leave it at that.

11             Why don't you confer with your brother

12   Mr. Ellington, Mr. Stebbins, and anything you want

13   to expedite is fine with me.  You can go as fast as

14   y'all want to.  I am happy to do that and I do think

15   some accommodation ought to given in that regard.

16             You all can be at ease and I will clean

17   up the bench.

18

19                   (Hearing concluded.)

20

21

22

23

24

25

113

C E R T I F I C A T E

G E O R G I A:

RICHMOND COUNTY:

I hereby certify that the foregoing
transcript was taken down, as stated in
the caption, and the questions and answers
thereto were reduced to typewriting under
my direction; that the foregoing pages 1
through 112 represent a true, complete, and
correct transcript of the evidence given
upon said hearing, and I further certify
that I am not of kin or counsel to the
parties in the case; am not in the regular
employ of counsel for any of said parties;
nor am I in anywise interested in the result
of said case.

This, the 29th day of January, 2006.

RICHARD A. DUERINGER, CCR-A-48.

My commission expires on the

3rd day of May 2008.

# EXHIBIT 3

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 JAN 24 PM 2: 50

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

TEXTRON INNOVATIONS, INC.,　　*
and E-Z GO (a division of　　　*
TEXTRON, INC.),　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　Plaintiffs,　　　　　*
　　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　　*　　　CV 106-009
　　　　　　　　　　　　　　　　*
FAIRPLAY ELECTRIC CARS, LLC,　*
　　　　　　　　　　　　　　　　*
　　　　　Defendant.　　　　　　*

O R D E R

Presently before the Court in the captioned matter is Plaintiffs' motion for a preliminary injunction to enjoin Defendant from infringing Plaintiffs' United States Design Patent No. 369,762. (Doc. No. 3.) Upon consideration of the evidence and the parties' written and oral arguments, the Court orally expressed findings of fact and conclusions of law into the record at the conclusion of the hearing held yesterday on this matter.

Based upon those findings of fact and conclusions of law, **IT IS HEREBY ORDERED** that Defendant Fairplay Electric Cars, LLC,[1] is enjoined and restrained within the United States of

---

[1] Pursuant to Federal Rule of Civil Procedure 65(d), this injunction is binding upon Defendant's officers, agents, servants, employees, and attorneys, and any person in active concert or participation with them who receive actual notice

America from making, assembling, importing, marketing, selling, or leasing the two-seater versions of Defendant's Fleet and Legacy Model Golf Cars, or any equivalent golf car.

This Order shall remain in effect until February 6, 2006; however, the expiration date of this Order will be extended if Defendant does not file its opposition to this injunction and arrange for another hearing by the close of business on February 6, 2006.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of January, 2006.

UNITED STATES DISTRICT JUDGE

of this Order, by personal service or otherwise.

2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### Augusta Division

Scott L. Poff
Clerk

Telephone :
(706) 849-4400



### FACSIMILE TRANSMITTAL SHEET

Date : _____1/24/2006_____

To   : _James B. Ellington, Esq._     From : _Joseph A. Howell, III_____

_Charles C. Stebbins, III, Esq._     _Deputy Clerk, Augusta Division_

Document Description : RE: CV 106-009 - Textron Innovations, Inc., et al. v. Fairplay Electric
Cars, LLC - Copy of the Court's Preliminary Injunction Order signed
and entered by Judge Dudley H. Bowen, Jr. on January 24, 2006
and filed by the Clerk at 2:50 P.M. on the same date.

Total Number of Pages : _____2_____
(Excluding Transmittal Page)

Local Contact Person : _Joe Howell_____

Telephone Number : _(706) 849-4400_____

Note :  This order is being sent via facsimile transmission to Messrs. Ellington and Stebbins
at the direction of the Court. The Clerk will serve all counsel by mail with a copy of
the order, as is the custom.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### Augusta Division

Scott L. Poff
Clerk

Telephone :
(706) 849-4400



## FACSIMILE TRANSMITTAL SHEET

Date : _____ 1/24/2006 _____

To : ___ James B. Ellington, Esq. ___        From : ___ Joseph A. Howell, III ___

___ Charles C. Stebbins, III, Esq. ___        ___ Deputy Clerk, Augusta Division ___

Document Description : RE: CV 106-009 – Textron Innovations, Inc., et al. v. Fairplay Electric Cars, LLC - Copy of the Court's Preliminary Injunction Order signed and entered by Judge Dudley H. Bowen, Jr. on January 24, 2006 and filed by the Clerk at 2:50 P.M. on the same date.

Total Number of Pages : _____ 2 _____
(Excluding Transmittal Page)

Local Contact Person : ___ Joe Howell ___
Telephone Number : ___ (706) 849-4400 ___

Note :   This order is being sent via facsimile transmission to Messrs. Ellington and Stebbins at the direction of the Court. The Clerk will serve all counsel by mail with a copy of the order, as is the custom.

Group Send Report

Page    : 001
Date & Time: Jan-24-06  03:49pm
Line 1    : 7068494401
Machine ID : USDC Aug

Job number          :   573

Date                :   Jan-24 03:47pm

Number of pages     :   003

Start time          :   Jan-24 03:47pm

End time            :   Jan-24 03:49pm

Successful nbrs

    Fax numbers

        ☎7229779
        ☎7221822

Unsuccessful nbrs.                                    Pages sent

# EXHIBIT 4

FILED
U.S. DISTRICT COURT
.... DIV.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

2006 FEB -6 PM 3: 39

CLERK _S.D.McCarthy_
SO. DIST. OF GA.

TEXTRON INNOVATIONS, INC.,     *
and E-Z GO (a division of      *
TEXTRON, INC.),                *
                               *
        Plaintiffs,            *
                               *
   v.                          *          CV 106-009
                               *
FAIRPLAY ELECTRIC CARS, LLC,   *
                               *
        Defendant.             *

---

## O R D E R

Presently before the Court in the captioned case is the
preliminary injunction of Defendant Fairplay Electric Cars'
manufacturing, marketing, and sale of its Fleet and Legacy
Model Golf Cars which was set to expire of its own terms
today.  (See Order of January 24, 2006 at 2.)  Defendant,
through counsel, requested a hearing on its opposition to this
injunction.  Accordingly, **IT IS ORDERED** that such a hearing
will be held at 3:00 p.m., February 22, 2006, in Courtroom No.
2 of the United States Courthouse, 500 E. Ford Street,
Augusta, Georgia.  Further, **IT IS ORDERED** that the preliminary
injunction expressed in the Order of January 24, 2006 shall be
and remain in effect until further order of the Court.

ORDER ENTERED at Augusta, Georgia, this 6th day of
February, 2006.

_____
UNITED STATES DISTRICT JUDGE

DHB (39)                                              CCC:

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| TEXTRON INNOVATIONS, INC. and | ) | |
| | ) | |
| E-Z GO (a division of TEXTRON, INC.), | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. CV 106-009 |
| | ) | |
| v. | ) | |
| | ) | |
| FAIRPLAY ELECTRIC CARS, LLC, | ) | |
| | ) | |
| Defendant | ) | |

RESPONSIVE PLEADING AND COUNTERCLAIMS OF
DEFENDANT FAIRPLAY ELECTRIC CARS. LLC

NOW COMES  Fairplay Electric Cars, LLC ("Fairplay"), Defendant named above, and

for this its responsive pleading to the complaint herein and its Counterclaims shows as

follows:

FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

SECOND DEFENSE

Fairplay believes that, upon a proper investigation through discovery and/or other

appropriate means, the Claim of the '717 Patent, as identified in paragraph numbered "2"

of the Complaint, will be found to be invalid because it does not meet the conditions for

patentability in 35 U.S.C. Sections 102, 103, 112 and/or 171.

THIRD DEFENSE

Fairplay believes that, upon a proper investigation through discovery and/or other

appropriate means, the Claim of the '762 Patent, as identified in paragraph numbered "2"

1

of the Complaint, will be found to be invalid because it does not meet the conditions for patentability in 335 U.S.C. Sections 102, 103, 112 and/or 171.

## FOURTH DEFENSE

Fairplay believes that, upon a proper investigation through discovery and/or other appropriate means, the Claim of the '099 Patent, as identified in paragraph numbered "2" of the Complaint, will be found to be invalid because it does not meet the conditions for patentability in 335 U.S.C. Sections 102, 103, 112 and/or 171.

## FIFTH DEFENSE

No damages are collectible for allegations of patent infringement prior to compliance with the notice provisions of 35 U.S.C. § 287.

## SIXTH DEFENSE

Plaintiffs' claims of patent infringement are barred by the doctrine of prosecution history estoppel.

## SEVENTH DEFENSE

Plaintiffs are legally and/or equitably estopped from making their claims and assertions set forth in the Complaint.

## EIGHTH DEFENSE

Plaintiffs are guilty of laches and unreasonable delay in raising the claims and assertions set forth in the Complaint, and their failure to raise such claims and assertions in a timely manner prejudiced Fairplay.

## NINTH DEFENSE

Plaintiffs are guilty of patent misuse in that their claims and assertions result in a broader scope of the '762 Patent than was granted

2

## TENTH DEFENSE

Plaintiffs' trade dress is functional and incapable of protection under trademark, trade dress or unfair competition law.

## ELEVENTH DEFENSE

Plaintiffs' trade dress has not acquired secondary meaning.

## TWELFTH DEFENSE

Plaintiffs' trade dress is not distinctive or widely recognized.

## THIRTEENTH DEFENSE

Fairplay's activities and/or products do not cause a likelihood of confusion, mistake or deception as to the source of Fairplay's activities and/or products, because Fairplay's activities and/or products are not confusingly similar to Plaintiffs' products

## FOURTEENTH DEFENSE

Fairplay's activities are protected by the Fair Use Doctrine.

## FIFTEENTH DEFENSE

Plaintiffs' claims under Georgia law are in an area pre-empted by Federal law, and thus Plaintiffs cannot obtain protection under Georgia law.

## SIXTEENTH DEFENSE

Plaintiffs' claims under common law are in an area pre-empted by Federal law, and thus Plaintiffs cannot obtain protection under common law

## SEVENTEENTH DEFENSE

Fairplay reserves all affirmative defenses under Rule 8 of the Federal Rules of Civil Procedure, the Patent Law of the United States of America, and any other defenses

3

at law or in equity, that may now or in the future be available based on discovery or other factual investigation concerning this Action

<u>EIGHTEENTH DEFENSE</u>

1. For response to paragraph numbered "1" of the Complaint, Fairplay admits that Plaintiffs purport to have made a demand for jury trial, but Fairplay denies that Plaintiffs are entitled to maintain this action or to any relief, and Fairplay denies all remaining allegations of this paragraph.

2. For response to paragraph numbered "2" of the Complaint, Fairplay admits that the Complaint purports to be an action for, *inter alia*, patent infringement under 35 U.S.C. §§ 271, *et seq.*, trade dress infringement, unfair competition and deceptive trade practices, but denies that Plaintiffs are entitled to maintain this Action or to any relief. Fairplay admits that U.S. Design Patent Nos. 345,717 ("the '717 Patent"), 369,762 ("the '762 Patent") and 373,099 ("the '099 Patent") are each entitled "Golf Car," and that a copy of each are attached to the Complaint as Exhibits A-C. Fairplay admits that the '717 Patent was issued on April 5, 1994 in the name of Inventors William R. Molzon and James M. Criscuolo. Fairplay admits that the '762 Patent was issued on May 14, 1996 in the name of Inventors William R. Molzon and James M. Criscuolo. Fairplay admits that the '099 Patent was issued on August 27, 1996 in the name of Inventors William R. Molzon and James M. Criscuolo. Fairplay denies all remaining allegations of this paragraph.

3. For response to paragraph numbered "3" of the Complaint, Fairplay admits that the Complaint purports to be an action for patent infringement, but Fairplay denies that Plaintiffs are entitled to maintain this action or to any relief, and Fairplay denies all remaining allegations of this paragraph.

4.   Fairplay denies the allegations contained in paragraph numbered "4" of the Complaint.

5.   Fairplay denies the allegations contained in paragraph numbered "5" of the Complaint

6.   Fairplay denies the allegations contained in paragraph numbered "6" of the Complaint

7.   Fairplay denies the allegations contained in paragraph numbered "7" of the Complaint.

8.   Fairplay denies the allegations contained in paragraph numbered "8" of the Complaint.

9.   Fairplay denies the allegations contained in paragraph numbered "9" of the Complaint

10.  Fairplay denies the allegations contained in paragraph numbered "10" of the Complaint.

11.  For response to paragraph numbered "11" of the Complaint, Fairplay admits that Plaintiff Textron Innovations, Inc is a Delaware corporation but is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph, which are therefore denied.

12   For response to paragraph numbered "12" of the Complaint, Fairplay admits that Plaintiff Textron, Inc is a Delaware corporation but is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph, which are therefore denied.

13. Fairplay is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "13" of the Complaint, which are therefore denied.

14 Fairplay admits the allegations contained in paragraph numbered "14" of the Complaint.

15. For response to paragraph numbered "15" of the Complaint, Fairplay admits that it advertises golf cars for sale nationally and that it has a network of regional distributorships throughout the United States to advertise, market and sell golf cars, but Fairplay denies all remaining allegations of this paragraph.

16. For response to paragraph numbered "16" of the Complaint, Fairplay shows that the same are legal conclusions to which no admission or denial is necessary.

17. For response to paragraph numbered "17" of the Complaint, Fairplay shows that the same are legal conclusions to which no admission or denial is necessary.

18. For response to paragraph numbered "18" of the Complaint, Fairplay shows that the jurisdictional allegations presented in this paragraph are legal conclusions to which no admission or denial is necessary, and Fairplay denies all remaining allegations of this paragraph

19. For response to paragraph numbered "19" of the Complaint, Fairplay is without information or knowledge sufficient to form a belief as to the truth of the allegations regarding E-Z-GO's principal place of business, states that the jurisdictional allegations of this paragraph are legal conclusions to which no admission or denial is necessary, and denies all remaining allegations of this paragraph.

20  For response to paragraph numbered "20" of the Complaint, Fairplay incorporates its responses to paragraphs numbered "1" through "19" of the Complaint, as hereinabove stated.

21   Fairplay denies the allegations contained in paragraph numbered "21" of the Complaint.

22   Fairplay denies the allegations contained in paragraph numbered "22" of the Complaint

23   Fairplay denies the allegations contained in paragraph numbered "23" of the Complaint.

24. For response to paragraph numbered "24" of the Complaint, Fairplay incorporates its responses to paragraphs numbered "1" through "23" of the Complaint, as hereinabove stated.

25.  Fairplay denies the allegations contained in paragraph numbered "25" of the Complaint

26. For response to paragraph numbered "26" of the Complaint, Fairplay incorporates its responses to paragraphs numbered "1" through "26" of the Complaint, as hereinabove stated

27   Fairplay denies the allegations contained in paragraph numbered "27" of the Complaint.

28.  Fairplay denies the allegations contained in paragraph numbered "28" of the Complaint.

29   Fairplay denies the allegations contained in paragraph numbered "29" of the Complaint.

30  For response to paragraph numbered "30" of the Complaint, Fairplay incorporates its responses to paragraphs numbered "1" through "29", as hereinabove stated, and Fairplay further denies all remaining allegations of this paragraph.

31  For response to paragraph numbered "31" of the Complaint, Fairplay incorporates its responses to paragraphs numbered "1" through "30" of the Complaint, as hereinabove stated.

32.  Fairplay denies the allegations contained in paragraph numbered "32" of the Complaint.

33  Fairplay denies the allegations contained in paragraph numbered "33" of the Complaint.

34.  Fairplay denies the allegations contained in paragraph numbered "34" of the Complaint.

35  For response to paragraph numbered "35" of the Complaint, Fairplay incorporates its responses to paragraphs "1" through "34" of the Complaint, as hereinabove stated.

36.  Fairplay denies the allegations contained in paragraph numbered "36" of the Complaint.

37.  For response to paragraph numbered "37" of the Complaint, Fairplay incorporates its responses to paragraphs numbered "1" through "36" of the Complaint, as hereinabove stated.

38.  Fairplay denies the allegations contained in paragraph numbered "38" of the Complaint.

39.  Fairplay denies the allegations contained in paragraph numbered "39" of the Complaint.

40  For response to paragraph numbered "40" of the Complaint, Fairplay incorporates its responses to paragraphs numbered "1" through "39", as hereinabove stated.

41  For response to paragraph numbered "41" of the Complaint, Fairplay admits only that both Fairplay and EZ-GO market and sell golf cars, but Fairplay denies all remaining allegations of this paragraph.

42.  Fairplay denies the allegations contained in paragraph numbered "42" of the Complaint.

43  Fairplay denies the allegations contained in paragraph numbered "43" of the Complaint.

44.  For response to paragraph numbered "44" of the Complaint, Fairplay incorporates its responses to paragraphs numbered "1" through "43" of the Complaint, as hereinabove stated

45.  For response to paragraph numbered "45" of the Complaint, Fairplay admits only that both Fairplay and E-Z-GO market and sell golf cars, but Fairplay denies all remaining allegations of this paragraph.

46  Fairplay denies the allegations contained in paragraph numbered "46" of the Complaint.

47  Fairplay denies the allegations contained in paragraph numbered "47" of the Complaint.

48.  For response to paragraph numbered "48" of the Complaint, Fairplay incorporates its response to paragraphs numbered "1" through "47" of the Complaint, as hereinabove stated.

49. Fairplay denies the allegations contained in paragraph numbered "49" of the Complaint

50 Fairplay denies the allegations contained in paragraph numbered "50" of the Complaint.

51 Fairplay denies the allegations contained in paragraph numbered "51" of the Complaint.

52 Fairplay denies the allegations contained in paragraph numbered "52" of the Complaint.

53 For further response to the Complaint, Fairplay denies each and every allegations thereof not specifically admitted herein, and further Fairplay denies that Plaintiffs are entitled to any of the relief sought in their Prayer for Relief.

<u>COUNTERCLAIMS</u>

For its counterclaims against Plaintiffs, Fairplay states and alleges as follows:

1. Fairplay is a Limited Liability Corporation organized and existing under the laws of Colorado. Fairplay represents that it has a place of business at '743 Horizon Ct , Suite 333, Grand Junction, Colorado, 81506

2. Fairplay is in the business of, *inter alia*, marketing and selling electric cars, including golf cars. Within this business, Fairplay markets and sells Legacy Model Golf Car Nos. PEC-2L4840 and PEC-4L4840, Legacy LX Model Golf Car Nos. PEC-2LX4855 and PEC-4LX4840 and Fleet Model Golf Car Nos. PEC-2F4840 and PEC-4F4840 (collectively, the "Legacy and Fleet Model Golf Cars")

3. On information and belief, Textron Innovations, Inc is a Delaware corporation organized and existing under the laws of Delaware and having its principal place of business at 40 Westminster Street, Providence, Rhode Island, 02903.

4. On information and belief, Textron, Inc is a Delaware corporation organized and existing under the laws of Delaware and having its principal place of business at 40 Westminster Street, Providence, Rhode Island, 02903

5. On information and belief, E-Z-GO is a division of Textron Inc with its principal place of business at 1451 Marvin Griffin Road, Augusta, Georgia 30906. E-Z-GO is in the business of, *inter alia*, marketing and selling golf cars

6 This Court has subject matter jurisdiction over these counterclaims based on 28 U S.C. §§ 1331, 1338(a)-(b) and 15 U.S.C. § 1121

7 Plaintiffs allege that they are the owner and exclusive licensee in a particular field of the '717, '762 and '099 Patents. Plaintiffs have brought suit against Fairplay alleging infringement of the '717, '762 and '099 Patents

COUNT ONE

(Declaration of Non-Infringement of the '717 Patent)

8. Fairplay incorporates Paragraphs 1-7 of these Counterclaims as through fully set forth herein.

9. An actual case or controversy exists between Plaintiffs and Fairplay concerning infringement of the '717 Patent.

10. Fairplay's Legacy and Fleet Model Golf Cars do not incorporate each and every element required in the Claim of the '717 Patent, either literally or under the doctrine of equivalents.

11. Fairplay does not infringe the Claims of the '717 Patent by its Legacy and Fleet Model Golf Cars, and Fairplay's conduct does not violate 35 U.S.C § 271.

12 The 717' Patent is, and should be declared, not infringed by Fairplay.

<u>COUNT TWO</u>

(Declaration of Non-Infringement of the '762 Patent)

13  Fairplay incorporates Paragraphs 1-12 of these Counterclaims as through fully set forth herein.

14  An actual case or controversy exists between Plaintiffs and Fairplay concerning infringement of the '762 Patent.

15. Fairplay's Legacy and Fleet Model Golf Cars do not incorporate each and every element required in the Claim of the '762 Patent, either literally or under the doctrine of equivalents.

16. FAirplay does not infringe the Claims of the '762 Patent by its Legacy and Fleet Model Golf Cars, and Fairplay's conduct does not violate 35 U.S.C. § 271.

17. The '762 Patent is, and should be declared, not infringed by Fairplay.

<u>COUNT THREE</u>

(Declaration of Non-Infringement of the '099 Patent)

18. Fairplay incorporates Paragraphs 1-17 of these Counterclaims as through fully set forth herein.

19. An actual case or controversy exists between Plaintiffs and Fairplay concerning infringement of the '099 Patent

20. Fairplay's Legacy and Fleet Model Golf Car product lines do not incorporate each and every element required in the Claim of the '099 Patent, either literally or under the doctrine of equivalents.

21 Fairplay does not infringe the Claims of the '099 Patent by its Legacy and Fleet Model Golf Cars, and Fairplay's conduct does not violate 35 U S C. § 271.

22 The '099 Patent is, and should be declared, not infringed by Fairplay

## COUNT FOUR

### (Declaration of Patent Misuse of the '762 Patent)

23. Fairplay incorporates Paragraphs 1-22 of these Counterclaims as through fully set forth herein

24. Plaintiffs have attempted to use the rights in the '762 Patent to obtain or to coerce an unfair commercial advantage between Plaintiffs and Fairplay, by extending the economic effect of the '762 Patent beyond the scope thereof.

25 Plaintiffs have thus engaged in patent misuse concerning the '762 Patent

WHEREFORE, Fairplay prays for the following relief:

A For the Complaint to be dismissed with prejudice and for Plaintiffs' claims for relief to be denied in their entirety;

B. A declaration that the '717 Patent is not infringed by Fairplay's Legacy and Fleet Model Golf Cars;

C. A declaration that the '762 Patent is not infringed by Fairplay's Legacy and Fleet Model Golf Cars;

D. A declaration that the '099 Patent is not infringed by Fairplay's Legacy and Fleet Model Golf Cars;

E       A declaration that Plaintiffs misused the '762 Patent;

F       A declaration that this is an exceptional case and an award to Fairplay of

its attorneys' fees and costs under 35 U.S.C. § 285; and

G.      Such further relief as this Court may deem just and equitable

February 8, 2006

Charles C. Stebbins, III
Ga. Bar No. 677350
(706) 722-7543

OF COUNSEL:

WARLICK, TRITT, STEBBINS & HALL, LLP
Post Office Box 1495
Augusta, Georgia 30903-1495

Allan J. Sternstein
Illinois Bar No. 2728966
(Admitted pro hac vice)
(312) 627-2143

OF COUNSEL:

DYKEMA GOSSETT PLLC
10 S. Wacker Drive
Chicago, Illinois 60606

ATTORNEYS FOR DEFENDANT

14

CERTIFICATE OF SERVICE

This is to certify that I have caused a copy of the within and foregoing Responsive

Pleading and Counterclaims upon counsel for Plaintiffs by U.S. Mail addressed to:

James B. Ellington, Esq.
Hull, Towill, Norman, Barrett & Salley
Post Office Box 1564
Augusta, Georgia 30903-1564

Scott Robertson, Esq.
Christopher C. Campbell, Esq
Hunton & Williams LLP
1900 K Street, NW
Suite 1200
Washington, D.C. 20006

This the 8th day of February, 2006.

Charles C. Stebbins, III
Attorney for Defendant

15

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FAIRPLAY ELECTRIC CARS, LLC, | ) ) ) ) | C. A. NO. 1:06-cv-00060-JJF |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TEXTRON INNOVATIONS INC., AND | ) ) | |
| TEXTRON INC., (INCLUDING E-Z-GO A DIVISION OF TEXTRON INC.), | ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF JAMES RUNSTADLER

I, James Runstadler, declare, depose and state the following:

1.      My name is James Runstadler. I am over eighteen years old, and the facts stated herein are based on my own personal knowledge, and if called at trial, deposition or hearing, I could and would testify competently as to those facts.

2.      I am currently the Vice President - Licensing for Textron Innovations Inc. ("TII") of 40 Westminster Street, Providence, Rhode Island, 02903. In this position, I am responsible for and generally aware of issues pertaining to the enforcement of TII's patents against potential infringers. The Providence address is

TII's main office. I have been a TII employee and officer since November 18, 2002. TII's employees reside in Rhode Island and work at its 40 Westminster Street offices.

3. TII is incorporated in the State of Delaware.

4. One of the corporate purposes of TII is to hold, own, and manage intellectual property rights. TII is the assignee of United States Patent Nos., D369,762; D345,717; and D373,099 (hereinafter "TII Patents").

5. On January 17, 2006, TII, along with E-Z-GO (A Division of Textron Inc.) filed a Complaint, a Motion for Preliminary Injunction and a Memorandum of Law in Support of the Motion for Preliminary Injunction, as well as numerous Exhibits in support of the Memorandum of Law, in The United States District Court for the Southern District of Georgia, Augusta Division, against Fairplay Electric Cars, LLC ("Fairplay"). In the Complaint, TII asserted that Fairplay's "Fleet" and "Legacy" models of golf cars were infringing the TII Patents.

6. It is my understanding and belief that the present declaratory judgment action filed by Fairplay in the United States District Court for the District of Delaware (C. A. NO. 1:06-cv-00060-JJF, filed on January 30, 2006) involves a new model of golf car that Fairplay refers to as the "2007 ZX" model.

7. To the best of my knowledge, TII had no knowledge of the existence of the new "2007 ZX" golf car until a Show Cause Hearing held in the Augusta, Georgia Court, which hearing was held on January 23, 2006.

8. To the best of my knowledge, TII has not had any communication with Fairplay concerning the new "2007 ZX" model of golf car. To the best of my

knowledge, all communications with Fairplay have occurred through TII's counsel in the Georgia lawsuit.

9.     To the best of my knowledge, TII has not charged the new "2007 ZX" model with infringing any TII patent, trade dress, or any other intellectual property right.

Signed under the pains and penalties of perjury, this 17th day of February, 2006.


James Runstadler